## IMPERIAL PRODUCTS, INC., Plaintiff,

v.

## ENDURA PRODUCTS, INC., Defendant.

No. C–3–99–167.

United States District Court, S.D. Ohio, Western Division.

March 13, 2000.

Carla J. Morman, David C. Greer, Bieser, Greer & Landis, Dayton, OH, for Plaintiff.

Albert J. Lucas, Peter A. Rosato, Calfee Halter & Griswold, Columbus, OH, for Defendant.

**DECISION AND ENTRY OVERRULING MOTION TO DISMISS (DOC. # 3–1) FILED BY DEFENDANT ENDURA PRODUCTS, INC.; MOTION TO TRANSFER VENUE (DOC. # 3–2) FILED BY DEFENDANT ENDURA PRODUCTS, INC., OVERRULED**

RICE, Chief Judge.

This litigation stems from the alleged infringement by Defendant Endura Prod-

ucts, Inc. ("Endura"), on patents owned by Plaintiff Imperial Products, Inc. ("Imperial"). In its Complaint, Imperial asserts that Endura infringed on the patents by selling "door threshold assemblies" to customers in Ohio. (Doc. # 1 at ¶ 5, 8). Imperial contends that the infringing acts "have been and are still being performed. . . ." (*Id.* at ¶ 11). As a result, it seeks declaratory and injunctive relief, as well as compensatory damages of $1,000,000. Pending before the Court are two Motions filed by Endura: (1) a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 3–1); and (2) an alternative Motion to Transfer Venue (Doc. # 3–2).

## I. *Analysis of Defendant's Motion to Dismiss (Doc. # 3–1)*

In its Motion to Dismiss, Endura contends that the Court lacks personal jurisdiction over it, because it is an out-of-state Defendant, it is not amenable to suit under Ohio's long-arm statute and the exercise of *in personam* jurisdiction would violate federal due process. In support, the company alleges that it lacks any significant connections to Ohio. Brad Procton, a Vice President of Endura, avers that the company is based in North Carolina, where most of its employees and operations are located. (Procton affidavit, Doc. # 3 at ¶ 3¢—4). According to Procton, Endura (1) owns no property in Ohio, (2) has no offices or facilities in Ohio, (3) has no place of business in Ohio, (4) has no employees, agents or sales representatives in Ohio, (5) is not licensed to do business in Ohio and (6) has no telephone listing in Ohio. (*Id.* at ¶ 5). Procton also avers that his company receives orders for its products by telephone, fax or mail. (*Id.* at ¶ 6). He states that Endura's sales to residents of Ohio are relatively small. (*Id.* at ¶ 7). With respect to this litigation, Procton contends that Endura has generated less than $600 in gross revenue from Ohio sales of its allegedly infringing product over a three-

year period. (*Id.* at ¶ 8). This dollar amount purportedly represents one-tenth of one percent of Endura's total product sales nationwide. (*Id.* at ¶ 8). Based upon these assertions, Endura contends that the Court may not exercise personal jurisdiction over it.

■ When determining whether to exercise personal jurisdiction over an out-of-state accused patent infringer such as Endura, the Court must apply Federal Circuit law, rather than the law of the Sixth Circuit. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995). Under Federal Circuit law, the Court may resolve the present Rule 12(b)(2) Motion without conducting a hearing. In so doing, it must construe the pleadings, affidavits and other evidence in a light most favorable to Imperial. *Graphic Controls Corp. v. Utah Medical Products, Inc.,* 149 F.3d 1382, 1383 n. 1 (Fed.Cir.1998). Endura's Motion must be overruled if Imperial makes a prima facie showing of personal jurisdiction.[1] *See, e.g., United States v. Ziegler Bolt and Parts Co.,* 111 F.3d 878, 880. (Fed.Cir.1997).

In the present case, Imperial has provided the Court with affidavits and other materials to support its argument that the exercise of personal jurisdiction over Endura is proper. In the exercise of its discretion, the Court has chosen to resolve the jurisdictional issue on the basis of the pleadings, affidavits and other evidence before it. Consequently, the Court will construe the parties' evidence in a light most favorable to Imperial and against Endura. With the foregoing guidelines in mind, the Court turns now to its analysis of the *in personam* jurisdiction issue.

### A. *Applicable law*

■ Under Federal Circuit law, as elsewhere, "a district court's personal jurisdiction over a non-consenting defendant outside the boundaries of the forum [involves]

---

1. Sixth Circuit law is consistent with Federal Circuit law on this issue. *See, e.g., Serras v.*

*First Tennessee Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989).

a two-step inquiry." *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed.Cir.1998). "First, the district court determines whether a provision makes the defendant amenable to process, which usually depends on whether the 'defendant could be subjected to jurisdiction of a court of general jurisdiction in the state in which the district is located.'" *Id.*, quoting Fed.R.Civ.P. 4(k)(1)(A). This inquiry involves applying Ohio's "long-arm" statute, Ohio Revised Code § 2307.382, to the facts at hand. *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir.1995). "Second, the district court ensures that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice' that are embodied in the Due Process Clause" of the Fifth Amendment.[2] *Red Wing Shoe Co.*, 148 F.3d at 1358, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In accordance with this two-step approach, the Court first will determine whether Endura is amenable to suit under Ohio's long-arm statute.[3] If so, the Court then will determine whether it may exercise personal jurisdiction over Endura, consistent with the requirements of federal due process, as articulated by the Federal Circuit.[4]

**B.** *Ohio's Long–Arm Statute*

■ The Ohio long-arm statute provides, *inter alia*, that an Ohio court may exercise personal jurisdiction "as to a cause of action arising from" a defendant "[c]ausing tortious injury in this state by an act or omission outside the state, if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]" Ohio Rev.Code § 2307.382(A)(4). Although other subsections of the long-arm statute "may require direct contact with the state, [Federal Circuit] analysis of the plain meaning and application by Ohio courts of subsection (4) leads ... to [the] conclu[sion] that no such contact is required under that subsection." *Schwanger v. Munchkin, Inc.*, 217 F.3d 854, 1999 WL 820449 (Fed.Cir. Oct.7, 1999). Subsection (4) applies to defen-

---

**2.** Unlike a number of other circuit courts, the Federal Circuit has concluded that the Due Process Clause at issue for personal jurisdiction in patent cases is that of the Fifth Amendment rather than the Fourteenth Amendment. *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir.1995). "In any event, the question of which Due Process Clause controls the personal jurisdiction inquiry becomes purely academic because [the Federal Circuit], though professing reliance on the Fifth Amendment, applies the Fourteenth Amendment state-contacts test of *International Shoe.*" *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed.Cir.1998).

**3.** In the past, the Federal Circuit has merged its analysis of the Ohio long-arm statute with its due process analysis. *See, e.g., Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed.Cir.1995). In *Akro Corp.*, the court stated that Ohio's long-arm statute extends to the outer limits of due process. The *Akro* court failed to recognize, however, that the Ohio Supreme Court had expressly rejected such a notion the previous year in *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 (Ohio 1994). More recently, the Federal Circuit acknowledged *Goldstein* in an unreported decision and determined that Ohio's long-arm

statute *does not* extend to the limits of due process. *Schwanger v. Munchkin, Inc.*, 217 F.3d 854, 1999 WL 820449 (Fed.Cir. Oct.7, 1999). In *Schwanger*, the panel noted that *Akro Corp.* had involved only the exercise of long-arm jurisdiction under subsection (1) of Ohio's statute. With respect to the other subsections of the long-arm statute, the *Schwanger* court reasoned that the statute is not coterminous with the limits of due process. Consequently, when analyzing subsections other than subsection (1), "Ohio courts must not only ask whether due process is satisfied, but whether the court has jurisdiction over a defendant under the more stringent requirements of the state statute." *Schwanger*, 217 F.3d 854, 1999 WL at *2 n. 2.

**4.** When analyzing personal jurisdiction for purposes of federal due process, the Federal Circuit does not defer to the decisions of Ohio's state and federal courts. Federal Circuit precedent applies to the due process analysis when a plaintiff brings an action for patent infringement. *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1377 (Fed.Cir.1998).

dants who act outside of Ohio to cause tortious injury inside the state. Long-arm jurisdiction over such defendants exists if they regularly do or solicit business in Ohio, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in this state. *Id.*

Based upon the present record, the Court finds that Imperial has made a prima facie showing of personal jurisdiction over Endura, pursuant to subsection (4) of Ohio's long-arm statute. In reaching this conclusion, the Court finds instructive the Federal Circuit's analysis in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed.Cir.1994). The plaintiff in *Beverly Hills* filed suit in Virginia, alleging that the defendant, a foreign corporation, had infringed upon its patent by selling ceiling fans to consumers in the Commonwealth. The facts in *Beverly Hills* required the Federal Circuit to interpret a portion of Virginia's long-arm statute which is nearly identical to subsection (4) of the Ohio statute. In relevant part, the Virginia statute gave its courts personal jurisdiction over a cause of action arising from a person "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he ... derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." *Id.* at 1569. The Federal Circuit recognized that the first two requirements for exercising long-arm jurisdiction under that provision were: (1) a tortious injury in Virginia; and (2) an act or omission outside that forum which caused the injury. *Id.* at 1570.

The Federal Circuit then decided where the "tortious injury" occurs when an out-of-state defendant sells allegedly infringing

goods to customers in another state. After acknowledging various viewpoints on the issue, the *Beverly Hills* court determined, as a matter of federal patent law, that the tortious injury occurred in Virginia, where the infringing sales were made.[5] *Id.* at 1571. The Federal Circuit then noted that the "tortious injury" had been caused by an "act or omission" outside of Virginia, namely the defendant's purposeful shipping of its fans into the Commonwealth. *Id.* Finally, the *Beverly Hills* court concluded that the "substantial revenue" portion of the long-arm statute was satisfied, because the defendant had made "on-going and continuous shipments" of goods into Virginia. Notably, the Federal Circuit recognized that the "substantial revenue" prong of the long-arm statute did not require the defendant's revenue to have any connection to the pleaded causes of action. *Id.* Therefore, the court reasoned that *all* revenue the defendant derived from Virginia was relevant, "even though it resulted from the sale of unrelated goods." *Id.* at 1542.

Applied to the present case, the reasoning of *Beverly Hills* supports a finding of personal jurisdiction over Endura. As noted above, subsection (4) of Ohio's long-arm statute covers defendants who act outside of Ohio to cause a tortious injury in the state, if they regularly do or solicit business in Ohio, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed, or services rendered, in this state.

Construed most strongly in Imperial's favor, the evidence before the Court indicates that Endura caused a tortious injury in Ohio. Endura *admits* that it has sold "very small amounts" of an allegedly patent-infringing product to consumers in Ohio.[6] (Defendant's Responses to Requests

---

5. In reaching this conclusion, the Federal Circuit rejected the proposition that the tortious injury in a patent infringement case occurs where the patent owner resides. *Id.* at 1570. The *Beverly Hills* court's rejection of such a proposition is significant in the present case, because Imperial resides in Indiana, not Ohio.

6. According to Endura, it made six allegedly infringing sales which amounted to less than $600 in gross revenue for the last three years combined. (Doc. # 3, Procton affidavit at ¶ 8).

for Admissions, Doc. # 12 at Exh. K). The products in question were shipped to Ohio by Endura. (Doc. # 3, Procton affidavit at ¶ 3, 8). In accordance with *Beverly Hills*, the Court concludes that any "tortious injury" to Imperial, as a result of those sales, occurred in Ohio. *See also North American Philips v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed.Cir.1994) (holding that "to sell an infringing article to a buyer in Illinois is to commit a tort there"). The reasoning of *Beverly Hills* also persuades the Court that the allegedly "tortious injury" was caused by Endura's actions outside of Ohio, namely its shipment of allegedly patent-infringing products from its out-of-state location to customers in this state.

Finally, Imperial has made at least a prima facie showing that Endura regularly solicits business in Ohio or has derived substantial revenue from goods used in this state. Imperial has provided the Court with evidence indicating that, as of August 13, 1999, Endura maintained an Internet web site which listed two sales representatives for Ohio, including one who is physically located in this state. (Doc. # 12 at Exh. A). In response to this evidence, Endura cites an affidavit from Brad Procton, its Vice President. (Doc. # 13 at Exh. A). Procton denies that Endura has ever had any sales representatives in Ohio. He avers that the web site listing was a "clerical error." (*Id.*). Although Procton's representations may be true, the Court must construe the evidence in a light most favorable to Imperial and resolve any conflicts in its favor. Given Endura's recent representation on its web site that it has two sales representatives for Ohio, including one who is physically located in Columbus, a reasonable inference exists that its regularly *does* solicit

business in Ohio. Endura ultimately may demonstrate otherwise, but Imperial has made a prima facie showing on the issue. Imperial also has made a prima facie showing that Endura derives "substantial revenue" from goods sold to consumers in this state. Documents produced by Endura establish that its total sales to Ohio customers from 1996 through 1999 are well over $2,000,000. (Doc. # 12, Morman affidavit, at Exh. B, C, D, E, F, G, H, I).[7] In light of this evidence, the Court harbors no doubt that Endura has derived substantial revenue from its sales to buyers in this state.

In opposition to this last conclusion, Endura cites evidence indicating that it has made only six sales of its allegedly infringing product in Ohio. Endura also presents evidence showing that its allegedly infringing sales in Ohio generated gross revenue of only $600. (Procton affidavit at ¶ 8). In light of this evidence, Endura argues that it *did not* derive "substantial revenue" from the sale of its allegedly infringing product. This argument raises the issue of whether the court may consider *all* of Endura's Ohio sales, or only its allegedly infringing sales, when reviewing the "substantial revenue" prong of Ohio's long-arm statute.

Endura insists that any *non-infringing* sales are irrelevant to the Court's long-arm analysis. In support, it cites two recent Ohio district court decisions, *Glasstech, Inc. v. TGL Tempering Systems, Inc.*, 50 F.Supp.2d 722 (N.D.Ohio 1999) (Katz, J.), and *LSI Industries, Inc. v. Hubbell Lighting, Inc.*, 64 F.Supp.2d 705 (S.D.Ohio 1999) (Beckwith, J.). Upon review, the Court finds both cases to be distinguishable. In *Glasstech*, the plaintiff brought an action in the Northern District of Ohio, alleging that the defendants had

---

7. The documents cited by the Court have been filed under seal to preserve the confidentiality of the information contained therein. In order to resolve the present dispute, however, the Court finds it necessary to discuss Endura's sales records in general terms. The Court has taken care not to disclose to whom

any sales were made or to whom any particular Endura products were sold. Given its limited reference to Endura's documents, the Court does not believe that it has undermined the purpose behind allowing them to be filed under seal.

infringed on its patent for "architectural benders." Citing the Federal Circuit's analysis in *Beverly Hills* and *North American Philips*, the district court concluded that the plaintiff could not rely upon subsection (4) or the other subsections of Ohio's long-arm statute. In reaching this conclusion, the *Glasstech* court recognized that a "tortious injury" occurs, for purposes of Ohio's long-arm statute, where an infringing product is sold. *Id.* at 726–727. The court then reasoned: "[I]t is difficult to see how Ohio could be the legal situs of the injury. The bender has never entered Ohio's borders nor have any dealings with respect to the use or sale of the bender taken place in Ohio." *Id.* at 727. Given that *no* sales of the bender had taken place in Ohio, the *Glasstech* court found subsection (4) inapplicable, because no "tortious injury" had occurred in the state. The *Glasstech* court appropriately recognized that, under federal patent law, the situs of a tortious injury is "outside the reach of Ohio's long-arm statute unless the . . . selling of an infringing article occurs within Ohio's borders." *Id.* at 728. The court then concluded that "no matter how prevalent a defendant's unrelated contacts [i.e., sales of non-infringing articles] are with the state, a plaintiff cannot summon that defendant into [c]ourt when patent law is at issue[,] . . . [and] the situs of the injury was not Ohio[.]" *Id.* at 728.

Similarly, in *LSI Industries*, the plaintiff brought suit for patent infringement against the seller of a competing lighting product. Although the defendant had conducted a significant amount of business in Ohio, it had not sold any of its allegedly infringing product in the state. *Id.* at 706. Upon review, the *LSI Industries* court concluded that the plaintiff could not establish personal jurisdiction over the defendant pursuant to subsection (4) of Ohio's long-arm statute. In so doing, the district court noted that all of the allegedly infringing sales had occurred outside of Ohio. Relying upon the Federal Circuit's reasoning in *North American Philips* and *Beverly Hills*, the court recognized that

the locus of the tortious injury caused by patent infringement is the place where the offending sales occurred. Given that *none* of those sales had occurred in Ohio, the *LSI Industries* court found no "tortious injury" in the state, despite the fact that the defendant did a significant amount of business in Ohio. *Id.* at 707–708.

A review of *Glasstech* and *LSI Industries* makes clear that the defendants' non-infringing sales in Ohio were irrelevant *to the issue of whether a tortious injury had occurred in the state.* In each case, the district court correctly reasoned that *no amount* of non-tortious conduct in Ohio could establish a tortious injury for purposes of subsection (4) of the long-arm statute. Given the absence of a tortious injury, the two district courts *never considered* whether non-infringing sales in Ohio could be relied upon to demonstrate that the defendants had derived "substantial revenue" from sales to buyers in the state. Without a tortious injury occurring in Ohio, the *Glasstech* and *LSI Industries* courts simply never reached this issue. Unlike the defendants in *Glasstech* and *LSI Industries*, however, Endura admits that it has made six sales of allegedly infringing products to buyers in Ohio. In light of those sales, this Court concluded, *supra,* that Imperial has alleged the existence of a tortious injury in Ohio based upon Endura's conduct outside of the state.

After reviewing the language of Ohio's long-arm statute and the Federal Circuit's decision in *Beverly Hills,* the Court now concludes that Endura's *non-infringing* sales in Ohio *may* be considered on the issue of whether it derives "substantial revenue" from the sale of goods in the state. As a threshold matter, the Court notes that such a conclusion is supported by the plain language of the long-arm statute itself. Subsection (4) authorizes Ohio courts to exercise personal jurisdiction "as to a cause of action arising from" a defendant "[c]ausing tortious injury in this state

by an act or omission outside the state, if he ... derives substantial revenue from goods used or consumed ... in this state[.]" Ohio Rev.Code § 2307.382(A)(4). Absolutely nothing in this provision suggests that the "substantial revenue" must be derived solely from the tortious conduct underlying the plaintiff's causes of action. Notably, the Federal Circuit expressly rejected such a proposition *Beverly Hills* when it reviewed the nearly identical provision of the Virginia long-arm statute. *See Beverly Hills*, 21 F.3d at 1571–1572 (noting that "there is no requirement in subsection A.4 that the revenue derived have any connection to the pleaded causes of action," and that "revenue is relevant even though it resulted from the sale of unrelated goods"). Given that Endura has generated more than $2,000,000 in gross sales from Ohio buyers, the Court concludes that it derives "substantial revenue" from the state. Consequently, Imperial has made a prima facie showing sufficient to satisfy each requirement of § 2307.382(A)(4).[8] Having determined that Ohio's long-arm statute authorizes the exercise of personal jurisdiction over Endura, the remaining inquiry is whether the Court may do so consistent with federal due process.

## C. *Federal Due Process*

█ In the present case, Imperial urges the Court to exercise "specific" personal jurisdiction over Endura.[9] Whether the exercise of specific jurisdiction comports with due process involves a three-part inquiry. In particular, the Court must consider: (1) whether Endura purposely directed its activities at residents of Ohio; (2) whether Imperial's patent infringement claims arise out of or relate to Endura's contacts with Ohio; and (3) whether the exercise of personal jurisdiction over Endura is fair and reasonable. *Genetic Implant Systems, Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed.Cir.1997). If the foregoing requirements are met, then the Court's exercise of personal jurisdiction does not offend the Due Process Clause. *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed.Cir.1995).

Upon review, the Court concludes that Imperial has made a prima facie showing of personal jurisdiction sufficient to withstand Endura's Motion to Dismiss. With respect to the first part of the due process analysis, the record contains ample evidence to support a finding that Endura has purposely directed its sales activities at residents of Ohio. As noted, *supra*, the record contains evidence suggesting that Endura used two sales agents who are, or were, responsible for servicing the state. The record also contains sales records which indicate that Endura has sold more than $2,000,000 worth of goods to buyers in this state over a three-year period. (*See, e.g.,* Doc. #3 at Exh. C). Those sales were made to dozens of Ohio customers. (*Id.* at Exh. D, E, F, G, H, I). In light of this evidence, Imperial has made a prima facie showing that Endura purposefully directed its sales activities at the state of Ohio.

In opposition to this conclusion, Endura asserts once again that its sporadic sales of allegedly patent-infringing products in Ohio does not support a finding that it purposely availed itself of the privilege of acting in the state. (Doc. #3 at 9–11). The Court finds this argument unpersuasive. Although selling $600 worth of allegedly infringing "door threshold assemblies" in Ohio, considered alone, might not

8. In light of this conclusion, the Court need not address Imperial's review of the other subsections of Ohio's long-arm statute.

9. "Specific" personal jurisdiction is implicated when a plaintiff's cause of action arises out of or is related to a defendant's contacts with the forum state. *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed.Cir.1998). "General" personal jurisdiction exists when a defendant's contacts with the forum state are "systematic" and "substantial." *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1378 n. 3 (Fed.Cir.1998). Imperial has not alleged the existence of general personal jurisdiction.

support the exercise of specific jurisdiction over Endura, the company did much more. In addition to selling the offending door threshold assemblies, Endura has sold more than $2,000,000 worth of other door components and related items in this state since 1996, possibly with the assistance of two sales representatives. These additional sales are relevant to the Court's determination of whether Endura has sufficient minimum contacts with Ohio to satisfy the requirements of due process. *Cf. Genetic Implant Systems, Inc. v. Core–Vent Corp.,* 123 F.3d 1455, 1458 (Fed.Cir.1997) (concluding that various "substantial activities" in the forum state are relevant to the minimum contacts analysis, even if not directly related to the underlying cause of action, because "it is jurisdiction that is at issue, not liability for patent infringement"); *B & J Mfg. v. Solar Indus.,* 483 F.2d 594 (8th Cir.1973), *cert. denied,* 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974) (finding a defendant's sale of non-infringing products relevant to the federal due process analysis in a patent action).[10] In short, *all* of Endura's contacts with Ohio involve its sales of door components or related items. Given the substantial volume of those sales, and the possible existence of two Endura sales representatives servicing Ohio, the record supports a prima facie finding that Endura purposely directed its activities at this state.

Regarding the second part of the due process analysis, the Court concludes that Endura's patent-infringement claims "arise out of or relate to" its contacts with Ohio. As noted above, the company's contacts with Ohio appear to be limited to its sales of door components and related items. In the present case, Imperial's claims unquestionably "arise out of or relate to" those contacts. Indeed, Imperial alleges that Endura has sold certain "door threshold assemblies," which allegedly vio-

late its patents. Given the nature of these claims, the Court finds it beyond dispute that there is a connection between Endura's contacts with Ohio and the subject matter of Imperial's litigation.[11]

Finally, the Court concludes that the exercise of personal jurisdiction over Endura is both fair and reasonable. If all other requirements have been satisfied, only in a "rare situation" will the exercise of personal jurisdiction over an out-of-state defendant be unfair or unreasonable. Consequently, the burden rests "on the party over whom jurisdiction is sought to prove that jurisdiction would be constitutionally unreasonable." *3D Systems,* 160 F.3d at 1379–1380. In the present case, Endura has not met its burden of establishing a "compelling case" that would "render jurisdiction unreasonable[.]" *Red Wing Shoe Co.,* 148 F.3d at 1359. As set forth above, the company's only argument is that it lacks sufficient contacts with Ohio to justify the exercise of personal jurisdiction. Given Endura's sales of more than $2,000,000 to Ohio buyers over the past three years, and the possible existence of two Ohio sales representatives, the Court has rejected this argument. In light of the substantial revenues that Endura has generated from sales to Ohio customers, the Court finds nothing unfair or unreasonable about requiring it to defend against a lawsuit in this state. · Accordingly, Endura's Motion to Dismiss pursuant to Rule 12(b)(2) will be overruled.

## II. *Analysis of Defendant's Motion to Transfer Venue (Doc. # 3–2)*

 Also pending before the Court is Endura's alternative Motion to Transfer Venue (Doc. # 3–2). Endura contends that the Court should transfer this action to the United States District Court for the Middle District of North Carolina, pursu-

---

10. The Federal Circuit cited *B & J Mfg.* favorably in *Akro Corp.,* 45 F.3d at 1547–1548.

11. Endura does not address this part of the due process analysis in its Memorandum in

support of its Motion to Dismiss. It argues only that it lacks sufficient minimum contacts with Ohio to support the Court's exercise of personal jurisdiction. (Doc. # 3 at 9–11).

ant to 28 U.S.C. § 1404(a). In support, it alleges that North Carolina is the most convenient and logical forum for this litigation for several reasons: (1) Imperial's claims concern a product that was manufactured in, and sold from, Greensboro, North Carolina; (2) the allegedly infringing product was designed and developed in North Carolina; (3) Endura's documents and witnesses are located in North Carolina; and (4) Imperial itself is not an Ohio resident.[12] (Doc. #3 at 12).[13] In response, Imperial stresses that its principal place of business is Richmond, Indiana. Imperial also notes that the customers who purchased the allegedly infringing products are located in Ohio. Given that its witnesses and documents are close to this judicial forum, Imperial contends that a transfer to North Carolina merely would shift the inconvenience of litigating this action from the Defendant to the Plaintiff.

After reviewing the parties' respective arguments, the Court concludes that Endura has not met its burden of establishing that a transfer should be granted. Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought." When reviewing a motion to transfer under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, such as systemic

integrity and fairness, which come under the rubric of 'interests of justice.' " *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991), quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). District courts possess broad discretion to grant or deny a transfer under § 1404(a). *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir.1994).

With the forgoing considerations in mind, the Court rejects Endura's request to transfer this action to the Middle District of North Carolina. In support of a transfer, Endura argues that its allegedly infringing product was designed, manufactured and sold from North Carolina. Consequently, it stresses that all relevant records and other information regarding the product are located in that state. Although the Court does not dispute Endura's assertion, it notes that Imperial's patented product was designed, manufactured and sold from Richmond, Indiana. Consequently, all relevant records and other information regarding Imperial's product are located approximately an hour's drive from Dayton, Ohio. Similarly, while witnesses with knowledge about Endura's allegedly infringing product are located in Greensboro, North Carolina, witnesses with knowledge about Imperial's patented product are located in Richmond, Indiana. Information about Imperial's patented product is relevant in this litigation, because Endura is challenging the validity of Imperial's patents. (*See* Joint Discovery

---

**12.** Given that Imperial is an Indiana resident, Endura contends that Imperial's choice of forum is entitled to no deference.

**13.** Endura's arguments address some of the criteria that this Court has considered in the past when reviewing motions brought under § 1404(a). The relevant considerations vary somewhat from case to case, because each transfer decision involves its own unique set of circumstances. Factors which are often relevant, however, and which the Court has deemed significant in the past, include: "(1) the Plaintiff's choice of forum; (2) the relative ease of access to proof, including the convenience and proximity of witnesses and the

location of documentary evidence; (3) the respective court's familiarity with applicable law; (4) the need for a view of the premises; and (5) the likelihood of expeditious hearing in the respective courts." *Mead Data Central, Inc. v. West Publishing Co.*, 679 F.Supp. 1455, 1465 (S.D.Ohio 1987) (Rice, J.); *see also Cherokee Export Co. v. Chrysler International Corp.*, 142 F.3d 432, 1998 WL 57279 (6th Cir. Feb. 2, 1998) (recognizing that a court may consider any factor making litigation "easy, expeditious, and inexpensive"). In the present case, the need for a view of the premises does not appear to be relevant. Consequently, that factor will not be discussed.

Plan, Doc. # 9 at 4). Information regarding Imperial's operations is also relevant because the company alleges that Endura's infringement has resulted in a loss of sales to its Ohio customers. (*Id.*).

Therefore, while litigating in North Carolina may be more convenient for Endura, a resident of that state, litigating in Ohio will be more convenient for Imperial, given that it is located a short drive from this judicial forum. "The venue transfer provisions of Section 1404(a) [are] not meant to merely shift the inconvenience to the plaintiff." *Bacik v. Peek*, 888 F.Supp. 1405, 1415 (N.D.Ohio 1993), citing *Van Dusen v. Barrack*, 376 U.S. 612, 645–646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient."). Furthermore, the location of Endura's documents and records provides little support for a transfer, "because documents may be easily photocopied and shipped to wherever the documents are needed." *Armco, Inc. v. Reliance National Ins. Co.*, 1997 WL 311474 (S.D.Ohio May 30, 1997) (Dlott, J.).

The Court also finds unpersuasive Endura's argument that Imperial's choice of forum is entitled to *no* deference, because it is a resident of Richmond, Indiana. In support, Endura cites two New Jersey district court decisions, *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F.Supp. 1294 (D.N.J.1990), and *Atkinson & Mullen Travel, Inc. v. New York Apple Tours, Inc.*, 48 U.S.P.Q.2d 1377 (D.N.J. 1998). In neither case, however, did the district court conclude that a non-resident's choice of forum is entitled to no deference. Rather, both cases state that a non-resident plaintiff's choice of forum is entitled to *less* deference than it might otherwise receive. *See, e.g., American Tel. & Tel. Co.*, 736 F.Supp. at 1306 ("While [non-resident] AT & T's choice of forum is not afforded the degree of deference due to [its] place of residence, it is

not disregarded."). Such reasoning is consistent with the Sixth Circuit's determination that a non-resident plaintiff's choice of forum is entitled to *less* deference than forum choices made by residents or citizens. *Dowling v. Richardson–Merrell, Inc.*, 727 F.2d 608, 613 (6th Cir.1984). Consequently, the Court concludes that Imperial's choice of forum is entitled to some deference. In any event, based upon the reasoning set forth above, the Court concludes that the interests of the parties and witnesses do not support a transfer to the Middle District of North Carolina, regardless of whether Imperial's choice is given any deference. Endura has merely shown that transferring this action to North Carolina would lessen the inconvenience to it while increasing the inconvenience to Imperial.

Finally, the Court finds nothing in the record to suggest that the "interests of justice" would be better served by transferring the present action to the Middle District of North Carolina. Endura does not contend that the North Carolina court has a better grasp of federal patent law. Nor does it suggest that this action will be tried more expeditiously in North Carolina. Endura presents *no* argument to support a finding that the interests of justice would be advanced by transferring this litigation. As a result, the Court is unpersuaded by Endura's cursory assertion that this action should be transferred to the Middle District of North Carolina, pursuant to 28 U.S.C. § 1404(a). Endura has not met its "substantial" burden of demonstrating that a transfer " 'is warranted by the convenience of parties and witnesses and promotes the interest of justice.' " *Mead Data Central*, 679 F.Supp. at 1457, quoting *Van Dusen*, 376 U.S. at 616, 84 S.Ct. 805. Accordingly, Endura's Motion to Transfer Venue (Doc. # 3–2) will be overruled.

### III. *Conclusion*

Based upon the reasoning and citation of authority set forth above, the Defendant's

Motion to Dismiss (Doc. # 3–1), is over-ruled. The Defendant's Motion to Transfer Venue (Doc. # 3–2) is overruled.