Calvena WINSTON, Plaintiff,

v.

William David LEAK, M.D., et al., Defendants.

No. C2–00–617.

United States District Court, S.D. Ohio, Eastern Division.

March 28, 2001.

Darlene Eve Chavers, Larry Holliday James, Crabbe, Brown & James, Columbus, OH, for Plaintiff.

Elizabeth Jean Watters, Chester, Willcox & Saxbe, Kyle J. Stroh, Schottenstein, Zox & Dunn, Columbus, OH, for Defendants.

### OPINION AND ORDER

MARBLEY, District Judge.

## I.  INTRODUCTION

This matter comes before the Court on separate motions of several Defendants. Defendant Gregory Crisp ("Crisp") seeks dismissal for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).  Defendants Pain Net, Inc., Pain Net Practice Development, Inc., Pain Net Managed Care Consultants, Inc., Pain Net Managed Care, Inc., Pain Net Research and Development, Inc. and Pain Net Technologies, LLC (collectively, "Corporate Defendants") seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Defendants William David Leak ("Leak") and Pain Control Consultants, Inc. ("PCCI") seek dismissal under Rule 12(b)(6) of the Counts V and VI of the Complaint for failure to state a claim upon which relief can be granted.

For the following reasons the moving Defendants' motions are **GRANTED**.

## II.  THE COMPLAINT

Plaintiff filed her complaint in this˙ action on May 26, 2000 seeking damages on

various grounds: breach of contract; bad faith breach of contract; promissory estoppel; detrimental reliance; intentional infliction of emotional distress; and public policy tort claim of intentional infliction of emotional distress. Because a motion to dismiss pursuant to Rule 12(b)(6) examines the legal sufficiency of the Complaint, the Court accepts the truth of each allegation in the Complaint in ruling on these motions.

Plaintiff's claims are all premised upon an alleged breach of a promise made by Defendants PCCI/Leak to Plaintiff. Plaintiff entered into a written employment agreement with PPCI/Leak to serve as Office Manager of Pain Control Consultants at Alamance Regional Medical Center in North Carolina. Under the terms of the agreement, Plaintiff relocated from California to North Carolina. Plaintiff claims to have relied in good faith upon the employment agreement to act as office manager for PCCI, and did not seek employment elsewhere. Plaintiff claims that Defendants breached the agreement by refusing to employ Plaintiff once she relocated to North Carolina. Plaintiff claims that she suffered damages as a result of Defendants' actions.

## III. ANALYSIS

### A. Defendant Crisp's Motion To Dismiss for Lack of Jurisdiction [1]

Defendant Crisp contends that this Court lacks personal jurisdiction over him because he is an out-of-state Defendant without any significant connections to Ohio, he is not amenable to suit under Ohio's long-arm statute, and the exercise of in personam jurisdiction would violate his Federal due process rights. Plaintiff responds that personal jurisdiction over Crisp is based on specific jurisdiction, as the subject matter of the lawsuit arises out of or is related to the Defendant Crisp's contacts with Ohio.

The law of the forum state governs the question of personal jurisdiction in diversity cases. *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996). To be valid, personal jurisdiction must satisfy both Ohio's long-arm statute, OHIO REV. CODE § 2307.382, and the due process requirements of the Constitution. *Nationwide*, 91 F.3d at 793. In matters involving the transaction of business, however, the Sixth Circuit has held that Ohio's long-arm statute extends to the limits of the Due Process Clause. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir.1988). This Court's inquiry, then, is whether the strictures of the Due Process Clause will be violated by the exercise of jurisdiction over Crisp. *See Nationwide*, 91 F.3d at 793.[2]

The burden of establishing jurisdiction generally lies with the plaintiff. *American Greetings Corp.*, 839 F.2d at 1168. When the court does not conduct an evidentiary hearing on the matter, the plaintiff need make only a *prima facie* showing of per-

---

**1.** Defendant Crisp's Motion To Dismiss under Rule 12(b)(2) for lack of personal jurisdiction is discussed first because it disposes of the action against Crisp and thus obviates the need for consideration of his motion filed under Rule 12(b)(6).

**2.** Plaintiff's complaint sounds both in contract and tort. Yet, as she argues in her Memorandum Contra, her claim against Defendant Crisp arises from an alleged breach of employment contract, not from any tortious conduct by Crisp. Personal jurisdiction based on tort under Ohio's long-arm statute does not reach the outer limits of due process permitted by minimum contacts analysis. Analysis of the long-arm statute is unnecessary, however, because the Plaintiff has failed to establish minimum contacts upon which to exercise personal jurisdiction over Defendant Crisp in any event.

sonal jurisdiction. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998); *CompuServe, Inc., v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). This essentially means that the court is required to view the jurisdictional evidence in the light most favorable to the plaintiff. *See Goldstein v. Christiansen,* 70 Ohio St.3d 232, 237, 638 N.E.2d 541 (1994).

The Court must consider whether the jurisdiction over a defendant is consistent with "'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). When a defendant engages in "continuous and systematic" conduct within the forum state, he may be rendered amenable to suit in any lawsuit brought against him in the forum state. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d at 793. When the defendant has not engaged in such conduct, the plaintiff must establish specific jurisdiction by showing that "the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Id.* The Supreme Court has explained the interplay between specific jurisdiction and due process:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the traditional notions of fair play and substantial justice are] satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.

*Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotations omitted).

The Sixth Circuit has an established three-part test to determine whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Reynolds,* 23 F.3d at 1116 (quoting *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 226 (6th Cir.1972)).

To satisfy the first requirement, the defendant must be shown to have intentionally taken actions that create a "substantial connection" with the forum state, such that the defendant "should reasonably anticipate being haled into court there." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. The second prong requires that the plaintiff establish the essence of personal jurisdiction: the suit against the defendant must be based upon the defendant's contacts with the forum. *Nationwide,* 91 F.3d at 793. In determining when the exercise of jurisdiction over a defendant is reasonable, as required by prong three, the court must consider:

> the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

■ Applying the three-part test set forth in *Reynolds*, this Court looks first to whether Defendant Crisp purposefully availed himself of the privilege of acting in Ohio or caused a consequence to a resident of Ohio. *See Reynolds*, 23 F.3d at 1116. Here, the underlying basis of Plaintiff's claim is the breach of an employment agreement, which was to be performed in North Carolina, an agreement to which Crisp was not a party.[3] From the allegations of the Complaint there are two possible relevant connections of Crisp to Ohio: (1) his pain treatment training in Ohio with Defendant Leak; and (2) his business relationship with an Ohio resident, Leak, to operate a pain center in North Carolina. While Crisp may have attended training in Ohio in anticipation of opening a pain center, the relationship of such activity to the employment agreement which forms the basis of Plaintiff's lawsuit is at best remote; at worst it is nonexistent. "Random", "fortuitous", or "attenuated" contacts are not sufficient to confer personal jurisdiction over an out of state defendant. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. The alleged joint venture between Defendants Leak and Crisp was to do business in North Carolina, not Ohio.

Plaintiff has made no showing that Defendant Crisp availed himself of the privilege of doing business in Ohio or caused a consequence to a resident of Ohio that is actionable. Plaintiff's alleged employment contract was with Defendants PCCI/Leak, not the joint venture or Defendant Crisp. In fact, the core theory of Plaintiff's Complaint is that she was told her contract would be with Dr. Leak, not Dr. Crisp, and that such change of terms was tortious and a breach of the employment agreement.

The breach is attributed to Defendants PCCI/Leak, not Defendant Crisp. Furthermore, Plaintiff's claim arises from an agreement that was to be performed in North Carolina, and she was a resident of California at the time she entered into the agreement. This Court finds, therefore, that Defendant Crisp did not avail himself of the privilege of doing business in Ohio and did not cause a consequence to a resident of Ohio such that he would anticipate being haled into court there.

■ Under the second part of the *Reynolds* test, the cause of action must arise from Defendant Crisp's activities in Ohio. *See Reynolds*, 23 F.3d at 1116. There are no allegations before the Court that Crisp: (1) owns any property in Ohio; (2) has any office or facilities in Ohio; (3) has any place of business in Ohio; (4) has any employees, agents or sales representatives in Ohio; (5) is licensed to do business in Ohio; or (6) has any telephone listing in Ohio.[4] There are no allegations that Crisp is a shareholder, director, officer or affiliate of PCCI. There are no allegations that Crisp is involved in any business activity in Ohio other than the training he received from Leak. According to *Reynolds*, the activity of Crisp, i.e. training, must be an activity that gives rise to the cause of action alleged. *Id.* at 1116–17. The training in Ohio does not "connect" Crisp to Ohio in such a significant way that the exercise of personal jurisdiction over Crisp would be constitutional in a matter not directly arising out of that transaction. Plaintiff merely alleges that Crisp is in a joint venture with Leak, an alleged Ohio resident, to operate a pain center facility in North Carolina. Defendant Crisp contends that such attenuated contacts are

---

**3.** Plaintiff is very specific in her Complaint and in her brief contra that her employment contract was with Defendant Leak, not with Defendant Crisp.

**4.** *Imperial Prods. v. Endura Prods.*, 109 F.Supp.2d 809, 810 (S.D.Ohio 2000), listing relevant criteria for considering the constitutionality of asserting personal jurisdiction over a defendant.

insufficient to confer personal jurisdiction over him in Ohio. The Court agrees. Plaintiff's causes of action do not arise from either of these activities. Accordingly, the second part of the *Reynolds* test is not satisfied.

■ Finally, following the third part of the *Reynolds* test, this Court considers whether the acts of Defendant Crisp or the consequences caused by Crisp have a substantial enough contacts with Ohio to make the exercise of jurisdiction over the Crisp reasonable. *Id.* Neither Crisp's training in Ohio nor the alleged joint venture between Crisp and Leak to conduct business in North Carolina constitutes sufficient contacts with Ohio to make a *prima facie* showing that personal jurisdiction exists over defendant Crisp. Additionally, the consequences of the breach of employment agreement affected either a California or North Carolina resident, but not an Ohio resident. Because Plaintiff is unable to satisfy any part of the three-part test in *Reynolds,* Crisp's Motion To Dismiss for lack of personal jurisdiction is **GRANTED.**

## B. Rule 12(b)(6) Dismissal Standard

In considering a Rule 12(b)(6) motion to dismiss, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 724 (6th Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual

allegations and permissible inferences therein." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994). Though liberal, this standard of review requires more than the bare assertion of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id.*

### 1. Corporate Defendants' Rule 12(b)(6) Motion

■ There are no allegations that implicate the Corporate Defendants in the various causes of action asserted in the Complaint. Exhibit A to the Complaint shows that Plaintiff's employment agreement, *if any,* was with PCCI, Dr. Leak, or both, but not with the Corporate Defendants. There are no allegations, even with a liberal reading, that imply any connection between the employment agreement and the seven Corporate Defendants. The Complaint simply states that these seven corporations are incorporated in Ohio and that Dr. Leak is a principal in each of them. There are no assertions such as allegations of agency, joint venture, partnership, or other such legal relationship that could give rise to liability of these corporations for the acts of PCCI or Leak.

Plaintiff also argues that liability of the Corporate Defendants may arise from "reverse piercing" of the corporate veil, thereby holding the Corporate Defendants liable for the acts of Defendant Leak, an alleged principle in each such corporation.[5]

---

5. Reverse piercing occurs when assets of the corporate entity are used to satisfy the debts of the controlling alter ego. 1 W. Fletcher,

There are no allegations which, if true, would give rise to a "reverse piercing" of the corporate veil as urged by Plaintiff. Plaintiff has cited no Ohio law that supports her theory of "reverse piercing" of the corporate veil, and this court is bound to follow Ohio law, not create it. Plaintiff correctly cites *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993), as the controlling authority on piercing the corporate veil in Ohio. Piercing the corporate veil is generally permitted when a shareholder dominates the corporation to such an extent that it has no separate will or existence of its own. *Id.* at 288, 617 N.E.2d 1075. Under the "reverse piercing" theory advanced by Plaintiff, she seeks to reach the corporate assets of the Corporate Defendants, even though the Corporate Defendants were not parties to the employment agreement. Though this approach has been allowed in limited cases where the corporation was found to be the alter ego of its controlling shareholders and a creditor has sought to reach assets of the corporate entity to satisfy the debts of the controlling alter ego, the theory has not been embraced by Ohio courts in situations analogous to the present one.[6] Plaintiff has not alleged that Defendant Leak is without personal assets to satisfy her claims, nor that the assets of the Corporate Defendants should be held accountable for actions of Defendant Leak. The allegations of the Complaint do not support reverse-piercing the

Corporate Defendants, holding them financially accountable for Defendant Leak's actions as an individual.[7]

Accordingly, the Corporate Defendants' motion to dismiss is **GRANTED**.

### a. Leak's Motion—Rule 12(b)(6)

When its jurisdiction is based upon diversity, as is the case here, the Court is in effect a court of the forum state and must apply the substantive law of Ohio. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir.1999). A motion to dismiss pursuant to Rule 12(b)(6) therefore requires application of Ohio substantive law to determine whether the plaintiff's complaint states a claim upon which relief can be granted. Plaintiff here seeks damages for "intentional infliction of emotional distress" and "public policy tort," arising out of conduct alleged to have been committed by Leak and PCCI. The Complaint does not state sufficient facts upon which relief can be granted on these claims, and Counts V and VI must therefore be dismissed.

### 1. Intentional Infliction of Emotional Distress

■ To state a claim for intentional infliction of emotional distress, the plaintiff must allege that:

1. Defendants' conduct was extreme and outrageous;

2. Defendants either intended to cause or knew or should have known that

---

*Cyclopedia of the Law of Private Corporations* § 41.70 at 706–09 (rev.perm. ed.1990).

**6.** *Id.; See also, Century Hotels v. United States*, 952 F.2d 107, 110 (5th Cir.1992).

**7.** For example, in *Ames Inv. v. United States*, 1994 WL 529863, 1994 U.S.App. LEXIS 27554, 74 A.F.T.R.2d (RIA) 6573, 94 TNT 202–19 (6th Cir.Mich.1994), the court explained that in determining whether to reverse-pierce the corporate veil, the court

should consider the same factors as when piercing the corporate veil. *Id.* at *4, 1994 U.S.App. LEXIS 27554, *5. Such factors include the structure of ownership and control, observance of corporate formalities, presence of asset commingling, use of entity funds for individual purposes, and use of the entity for fraudulent or wrongful purposes. *See Century Hotels*, 952 F.2d at 110. The Plaintiff makes no claim in her complaint, which will support reverse-piercing by this Court.

their conduct would cause plaintiff serious emotional distress;

3. Defendants' conduct was the proximate cause of plaintiff's emotional injury; and

4. Plaintiff's injury was both severe and debilitating.

*Yeager v. Local Union 20 Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983).

█ It is not enough that a defendant acted with an intent to commit a tort, a criminal act or to inflict emotional distress; rather, a plaintiff must be able to show devastating injury as a consequence of intentional conduct so repugnant that it shocks the conscience. *Id.* at 374–75, 453 N.E.2d 666. Here, the allegations of the complaint reveal either a breach of contract or a misunderstanding, or disagreement over the terms of a contract. While it is unfortunate that Plaintiff may have moved to North Carolina from California in reliance on Defendants' alleged promise, breach of a promise is not, as a matter of law, so outrageous and extreme in degree as to go beyond all possible bounds of decency. *Id.* at 374, 453 N.E.2d 666. Such conduct may be actionable in contract, but it is not in tort. Accordingly, the PCCI–Leak Motion To Dismiss Count V of the Complaint is **GRANTED**.

## 2. Public Policy Tort

Plaintiff also claims that Defendants' actions constitute a public policy tort under Ohio law. Ohio law recognizes a basis for relief under a theory of public policy tort if certain factual elements exist. *Courtney v. Landair Transport, Inc.,* 227 F.3d 559, 566 (6th Cir.2000) (citing *Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653 (1995)). In Ohio, to establish a claim upon which relief can be granted for a public policy tort, the Plaintiff must allege:

1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Id.* at 70, 652 N.E.2d 653.

The *clarity* and *jeopardy* elements are questions of law to be determined by the court. *Id.* This Court's first task, then, is to identify whether a clear public policy exists in Ohio of which Defendants' alleged conduct would be violative. There are no allegations here of discrimination or sexual harassment, which typically accompany such claims. There are no allegations of retaliation, violations of constitutional rights, or invasion of any interest sought to be protected by a statute. Instead, Plaintiff simply alleges that Defendants broke a promise under the terms of a written employment agreement. A simple breach of an employment contract alone does not give rise to a public policy tort claim.[8] There being no public policy articulated in the Complaint upon which a public policy tort claim will lie, the PCCI–Leak Motion To Dismiss Count VI of the Complaint is **GRANTED**.

---

**8.** Otherwise, every breach of an employment contract would also amount to a "public policy" tort, a result unsupported by legal authority and antithetical to the distinction between contract and tort.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions To Dismiss are **GRANTED.**

**IT IS SO ORDERED.**