OPINION
Plaintiff, Joaline C. Mathias, appeals from a judgment of the Franklin County Court of Common Pleas awarding her $70,000 plus interest on her claim against defendants, Thomas J. Rosser ("Rosser"), Living Care Alternatives of Utica, Inc., Fairborn Health Care. Ltd., and Living Care Alternatives of Kirkersville, Inc.[1] for judgment on five promissory notes, but finding in favor of defendants on plaintiff's seven other claims. The three nursing home defendants also appeal from the judgment.
The parties are generally in agreement regarding the facts that give rise to this appeal. In the fall of 1985, plaintiff, having recently divorced and relocated to Columbus, Ohio, sought investment advice from Thomas J. Rosser. At the time, Rosser was a licensed salesman for Great Lakes Securities Company and held himself out as a financial advisor. Plaintiff sought Rosser's advice on how to invest an IRA account valued at $4,500, $5,000 she had in savings, and $20,000 she received as part of her divorce settlement. On Rosser's advice, plaintiff rolled her IRA over into a mutual fund, invested the money from her savings in government securities, and "invested" the money she received in her divorce settlement in three nursing homes owned by Rosser: Fairborn Health Care, Utica Nursing Home, and Pine Kirk Nursing Home.
At the time of plaintiff's initial investment in the three nursing homes, the nursing homes were sole proprietorships owned and managed by Rosser. In 1985, Fairborn Health Care was reorganized as Fairborn Health Care, Ltd., a limited partnership in which Rosser was the sole general partner. In 1986, Utica Nursing Home and Pine Kirk Nursing Home were incorporated respectively as Living Care Alternatives of Utica, Inc., dba Utica Nursing Home, and Living Care Alternatives of Kirkersville, Inc., dba Pine Kirk Nursing Home, with Rosser and his wife as shareholders. Following Rosser's divorce, Rosser became the sole shareholder in both corporations. Rosser continued to manage the three nursing homes after they became limited liability entities through his sole proprietorship, Financial Perspectives Company.
In exchange for the $20,000 that plaintiff invested in the nursing homes, she received a promissory note payable by Rosser personally. The note provided for semi-annual interest payments at a rate of fifteen percent per year and for the principal to be repaid no later than November 19, 1991. Although Rosser made all interest payments on the initial note, the principal amount was not repaid by the note's maturity date. Rather, when the note matured, Rosser presented plaintiff with a new note that promised quarterly interest payments at the rate of fifteen percent per year and repayment of the principal by November 20, 1996.
On four separate occasions between 1987 and 1992, plaintiff gave funds to Rosser with the understanding that the funds would be invested in one or more of the three nursing homes. The first of these four investments was for $20,000, and the remaining three were for $10,000 each. In exchange for these investments, plaintiff received promissory notes from Rosser that promised quarterly interest payments at rates between nine and twelve percent per year and repayment of the principal amounts at intervals from one to three years. As in the case of the initial note, Rosser made all interest payments due on the notes, but upon maturity issued new notes rather than repaying the principal amounts due on the notes. Several of the notes have been replaced more than one time.
The key terms of the most recent replacement promissory notes, the notes upon which plaintiff seeks to recover, are as follows: (1) Note 800-A: $20,000 principal, issued on November 20, 1991, quarterly interest payments at thirteen percent per year, repayment of principal due no later than November 20, 1996; (2) Note 900-D: $20,000 principal, issued on May 11, 1994, quarterly interest payments at eleven percent per year, repayment of principal no later than May 11, 1997; (3) Note 300-A: $10,000 principal, issued on May 15, 1994, quarterly interest payments at ten percent per year, repayment of principal no later than May 15, 1997; (4) Note 301-A: $10,000 principal, issued on July 15, 1994, quarterly interest payments at eleven percent per year, repayment of principal no later than July 15, 1997; and (5) Note 302-A: $10,000 principal, issued on December 29, 1995, quarterly interest payments at nine percent per year, repayment of principal no later than December 29, 1998. As in the case of the original note, Rosser signed each of these notes only in his individual capacity. By August 21, 1997, Rosser was in default on all five of the notes, having failed to pay either the interest, principal, or both due thereon.
On November 28, 1997, plaintiff filed an action in the Franklin County Court of Common Pleas against Rosser and the nursing home defendants, asserting claims for (1) breach of the promissory notes, (2) conversion, (3) recovery under R.C. 1707.41, (4) recovery under R.C. 1707.43, 1707.44(B), 1707.44(C)(1), 1707.44(E), 1707.44(G), and 1707.44(J), (5) breach of fiduciary duty, (6) fraud, (7) violation of R.C. 1701.93, and (8) violation of R.C. 1707.44(A) and 1701.14. Each of plaintiff's claims sought compensatory damages of $70,000, the total of the principal amounts from all five promissory notes, plus interest as provided for in the notes. In addition, plaintiff sought punitive damages on her claims for conversion, recovery under R.C. 1707.41, and fraud.
Beginning on July 20, 2000, plaintiff's claims were tried to the court. On March 30, 2001, the trial court issued a decision in which it found for plaintiff and against defendants on plaintiff's claim for breach of the five promissory notes, but against plaintiff and for defendants on plaintiff's other seven claims for relief. Accordingly, the trial court awarded plaintiff $70,000 plus interest on her claim for breach of the promissory notes. Plaintiff appeals from the judgment of the trial court assigning the following errors:
 [1.] THE COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT DENYING RECOVERY TO PLAINTIFF-APPELLANT PURSUANT TO 1707.41 O.R.C. AND 1707.43 O.R.C. ON THE GROUND THAT PLAINTIFF-APPELLANT, AS OPPOSED TO DEFENDANTS-APPELLEES, HAD THE BURDEN OF PROOF OF SHOWING THAT THE PROMISSORY NOTES WERE NOT AN EXEMPT SECURITY PURSUANT TO 1707.02(G) O.R.C.
 [2.] THE COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT DENYING RECOVERY TO PLAINTIFF-APPELLANT ON THE GROUND THAT DEFENDANTS-APPELLEES OWED NO FIDUCIARY DUTY TO PLAINTIFF-APPELLANT.
 [3.] THE COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY DENYING RECOVERY ON THE GROUNDS THAT DEFENDANT-APPELLEE DID NOT COMMIT FRAUD AND DECEIT ON PLAINTIFF-APPELLANT IN CONNECTION WITH DEFENDANTS-APPELLEES' SALE OF THE PROMISSORY NOTES.
Fairborn Health Care, Utica Nursing Home, and Pine Kirk Nursing Home (collectively the "nursing home defendants") also appeal from the judgment of the trial court assigning the following errors:
 [1.] THE LOWER COURT ERRED IN DETERMINING THAT THE CORPORATE NURSING HOME DEFENDANTS WERE "SUCCESSORS IN INTEREST" TO DEFENDANT THOMAS ROSSER.
 [2.] THE LOWER COURT ERRED IN DETERMINING THAT THE CORPORATE NURSING HOME DEFENDANTS WERE THE "ALTER EGOS" OF DEFENDANT THOMAS ROSSER.
 [3.] THE LOWER COURT ERRED IN FINDING THAT DEFENDANT THOMAS ROSSER ACTED AS THE AGENT FOR THE CORPORATE NURSING HOME DEFENDANTS.
In her first assignment of error, plaintiff contends that the trial court erred in denying her claims for recovery under R.C. 1707.41 and 1707.43 on the basis that the five promissory notes "sold" by defendants were exempt from registration pursuant to R.C. 1707.02(G).
R.C. Chapter 1707 governs the sale of "securities" in Ohio. Pursuant to R.C. 1707.01(B), promissory notes are "securities" for purposes of R.C. Chapter 1707. Further, Rosser's issuances of promissory notes in exchange for money constituted "sales" of securities as defined by R.C.1707.01(C). State v. Mong (1998), Licking App. No. 98CA0043. Pursuant to R.C. 1707.44(C)(1), the sale of securities that are neither registered in accordance with R.C. Chapter 1707, nor exempt from such registration requirements under R.C. 1707.02, is generally prohibited.
Alleging that the promissory notes at issue were neither registered nor exempt when they were sold to her, in violation of R.C. 1707.44(C)(1), plaintiff brought claims against defendants to recover her losses pursuant to R.C. 1707.41[2] and R.C. 1707.43.[3] The trial court ruled against plaintiff on these claims on the grounds that the promissory notes were exempt from registration pursuant to R.C. 1707.02(G) and Ohio Adm. Code 1301:6-3-02(D).[4] R.C. 1707.02(G) provides in relevant part that "* * * promissory notes are exempt when they are not offered directly or indirectly for sale to the public." Ohio Adm. Code1301:6-3-02(D) provides in relevant part:
 (1) Pursuant to division (G) of section 1707.02 of the Revised Code, commercial paper and promissory notes are not offered for sale directly or indirectly to the public where their sale is restricted to:
* * *
 (d) Sales by the issuer of the security to not more than ten persons in this state during any twelve month period * * *.
At trial, Rosser testified that he had raised approximately $750,000 by selling promissory notes to between twenty and thirty people in the same manner that he sold them to plaintiff. However, no evidence was presented regarding the time frame in which these people were sold notes. The evidence shows only that Rosser sold promissory notes between 1985 and 1995. Consequently, it cannot be determined whether Rosser had ever sold promissory notes to more than ten persons in a given year. Given the lack of evidence on the exemption issue, the question of whether the promissory notes sold by Rosser were exempt resolves to which party has the burden of proof on the issue.
R.C. 1707.45, which is entitled "Burden of Proof" provides:
 In any indictment, complaint, or information under section 1707.44 of the Revised Code, it shall not be necessary to negative the existence of facts which would bring a security within section 1707.02 of the Revised Code, or would bring a transaction within section 1707.03, 1707.04, or 1707.06 of the Revised Code, or to negative the existence of facts which would bring a transaction within the exceptions of section 1707.34 of the Revised Code. The burden of proof shall be upon the party claiming the benefits of any of such sections.
The trial court concluded that R.C. 1707.45 applies only to criminal cases. In the absence of R.C. 1707.45, the trial court concluded that plaintiff had the burden of proving every element of her case, including the fact that the promissory notes were not exempt. Given the evidence, the trial court found that plaintiff had failed to meet that burden. The trial court then ruled for defendants on plaintiff's claims for recovery under R.C. 1707.41 and 1707.43. Plaintiff now argues that the trial court erred in construing R.C. 1707.45 to apply only to criminal cases, and thus in finding for defendants on her claims under R.C. 1707.41 and 1707.43.
In construing R.C. 1707.45 to apply only to criminal cases, the trial court found that the language "any indictment, complaint, or information" referred only to criminal cases. We disagree. While the terms indictment and information do refer only to criminal actions, the term complaint is applicable to both criminal and civil actions. Further, we have been unable to locate a single case that supports the trial court's interpretation of R.C. 1707.45. Although we have found no cases in which the question of whether R.C. 1707.45 applies to civil cases has been directly addressed, we have found several cases in which R.C. 1707.45 has been applied in civil actions. See Chiles v. M.C. Capital Corp. (1994),95 Ohio App.3d 485, 496; Jelm v. Galan (1991), Cuyahoga App. No 58093; Seuffert v. Mobile Health Scan, Inc. (1989), Cuyahoga App. No. 51596; Roger v. Lehman Brothers Kuhn Loeb, Inc. (1985), 621 F. Supp. 114, 117. For these reasons, we conclude that R.C. 1707.43 is applicable to civil as well as criminal actions.
Because the trial court erred in failing to place the burden of establishing that the promissory notes were exempt from the registration requirements of R.C Chapter 1707 on defendants, the court's finding for defendants on plaintiff's claim to recover under R.C. 1707.41 and 1707.43 must be reversed. Plaintiff's first assignment of error is sustained.
In her second assignment of error, plaintiff challenges the trial court's denial of her claim for breach of fiduciary duty on the grounds that she failed to present any evidence that a fiduciary relationship existed between she and Rosser. The Ohio Supreme Court has defined a fiduciary relationship as a relationship in which one party to the relationship places a special confidence and trust in the integrity and fidelity of the other party to the relationship, and there is a resulting position of superiority or influence, acquired by virtue of the special trust. Ed Schory Sons, Inc. v. Society Natl. Bank (1996),75 Ohio St.3d 433, 442. In addition, there is general agreement that a broker or financial advisor is in a fiduciary relationship with his clients. Byrley v. Nationwide Life Ins. Co. (1994), 94 Ohio App.3d 1,18; Silverberg v. Thomson, Mckinnon Securities, Inc. (1985), Cuyahoga App. No. 48545; Mansbach v. Prescott, Ball Turben (C.A.6 1979),598 F.2d 1017, 1026.
In the present case, the evidence established that Rosser was a licensed stockbroker and held himself out as a financial advisor, and that plaintiff was an unsophisticated investor who sought investment advice from Rosser precisely because of his alleged expertise as a broker and investment advisor. Further, Rosser testified that plaintiff had relied upon his experience, knowledge, and expertise in seeking his advice. Therefore, we conclude that plaintiff presented sufficient evidence to establish that she and Rosser were in a fiduciary relationship. Plaintiff's second assignment of error is sustained.
Plaintiff's third assignment of error challenges the trial court's conclusion that plaintiff did not establish that Rosser had committed fraud in connection with his issuance of the five replacement promissory notes. The elements of fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49.
Plaintiff contends that the evidence indicates that when Rosser issued the five replacement promissory notes, the nursing home defendants were insolvent and that Rosser's failure to disclose this information to her prior to issuing the replacement notes constitutes fraud. The evidence does establish that the nursing home defendants were insolvent at the time of trial. However, the evidence does not indicate whether the nursing home defendants became insolvent before or after Rosser issued the five promissory notes in question. As a result, the evidence fails to establish that Rosser concealed the nursing home defendants' insolvency when he issued the notes. Accordingly, the trial court did not err in concluding that plaintiff failed to prove her claim of fraud. Plaintiff's third assignment of error is overruled.
We now turn to the nursing home defendants' three assignments of error. We will address these assignments of error together, as they all deal with the issue of whether the nursing home defendants are liable on the promissory notes. The trial court based its conclusion that the nursing home defendants are liable on the promissory notes on three separate legal theories: (1) successor liability, (2) agency, and (3) reverse corporate veil piercing. We will address each of these theories in turn.
The general rule of successor liability is that a business which succeeds to the interest of a prior existing business is not liable for the debts of the predecessor business unless the successor expressly or impliedly agreed to assume the liabilities of its predecessor; (2) the successor business's takeover of the predecessor business amounted to a de facto consolidation or merger; (3) the successor business is merely a continuation of the predecessor business; or (4) the transaction which led to the successor business's takeover of the predecessor business was entered into fraudulently for the purpose of escaping liability. See Kuempfel Service, Inc. v. Zofko (1996), 109 Ohio App.3d 591, 602 (setting forth the general rule of successor liability as it applies to corporate takeovers). However, successor liability is simply inapplicable to the present facts, because the nursing home defendants' predecessors were never liable on the five promissory notes on which plaintiff seeks to recover. While the sole proprietorships may have been liable on several of the original promissory notes, plaintiff seeks to recover on only the five most recent replacement notes, all of which were issued after the sole proprietorships ceased to exist. Because the sole proprietorships were never liable on the notes at issue, the nursing home defendants cannot have succeeded to liability thereon. Accordingly, the trial court erred in concluding that the nursing home defendants are liable on the promissory notes as the successors-in-interest to the sole proprietorships.
The trial court also concluded that the nursing home defendants are liable on the five promissory notes because they were alter egos of Rosser. In its traditional form, the alter ego doctrine, also known as the "piercing the corporate veil" doctrine, permits an individual to be held liable for the debts of a corporation where the individual has such control over the corporation that the corporation had no separate mind, will, or existence of its own. Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Companies, Inc. (1993), 67 Ohio St.3d 274, 287-290. However, in recent years a number of courts have discussed a "reverse" corporate veil piercing doctrine which would permit a corporation to be held liable for the debts of an individual where the corporation is so controlled by the individual that it amounts to the individual's alter ego. See In re Blatstein (C.A.3 1999), 192 F.3d 88, 100; Scholes v. Lehmann (C.A.7 1995), 56 F.3d 750, 758; Century Hotels v. United States (C.A.5 1992), 952 F.2d 107, 110, fn. 6; Zahra Spiritual Trust v. United States (C.A.5 1990), 910 F.2d 240, 243-244; Thomsen Family Trust, 1990 v. Peterson Family Ent. Inc. (Ark.App. 1999), 989 S.W.2d 934, 937. It is apparently upon this reverse corporate veil piercing doctrine that the trial court relied in imposing liability upon the nursing home defendants because they were the alter egos of Rosser.
Although reverse corporate veil piercing has been widely discussed, only a few jurisdictions have actually adopted the doctrine. See, e.g., LiButti v. U.S. (C.A.2 1997), 107 F.3d 110, 119; State v. Easton (1995), N.Y.S.2d 904, 908-909, and Ohio is not among them. In fact, we have located only one Ohio case which discusses reverse corporate veil piercing, Humitsch v. Collier (2000), Lake App. No. 99-L-099, and none in which liability has been imposed on the basis of the doctrine. See Winston v. Leak (S.D.Oh 2001), 159 F. Supp.2d 1012, 1017-1018 (noting that reverse corporate veil piercing has not been embraced by Ohio courts). Even if Ohio had adopted the doctrine of reverse corporate veil piercing, it would be inapplicable to the facts of the instant case because plaintiff can obtain virtually the identical result by attaching Rosser's interests in the nursing home defendants. See Scholes, at 758 (commenting that the application of reverse corporate veil piercing even to "one-man" corporations will be rare "because a simple transfer of the indebted shareholder's stock to his creditors will usually give them all they could get from seizing the assets directly."); Cascade Energy and Metals Corp. v. Banks (C.A.10 1990), 896 F.2d 1557 (stating that reverse corporate veil piercing is problematic because it allows a judgment creditor to bypass the normal judgment collection procedure of attaching the judgment debtor's shares in the corporation, and attach the corporate assets directly). Therefore, the trial court erred in concluding that the nursing home defendants are liable on the five promissory notes because they are Rosser's alter egos.
The final basis for the trial court's conclusion that the nursing home defendants are liable on the promissory notes is the court's finding that Rosser was acting as the agent of the nursing home defendants when he issued the notes. Although the trial court's opinion fails to indicate whether it found an agency relationship based upon expressed, implied, or apparent authority, plaintiff asserts that the trial court found that Rosser was clothed with the apparent authority to act for the nursing home defendants. In order to establish an agency relationship based on apparent authority, it must be shown (1) that the alleged principal held the alleged agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the alleged agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. Master Consolidated Corp. v. BancOhio Natl. Bank (1991),61 Ohio St.3d 570, syllabus.
Plaintiff appears to argue that the nursing home defendants, acting through their controlling shareholder or general partner, Rosser, held Rosser out as their agent for the purpose of raising capital when Rosser issued the five replacement promissory notes in exchange for the continued use of plaintiff's money. While the record is clear that plaintiff was told that her money would be used for the nursing homes, the record contains no evidence that plaintiff ever believed that Rosser was acting for the nursing home defendants when he issued the promissory notes. Rather, the record suggests that plaintiff believed that Rosser was acting as her investment advisor when he repeatedly urged her to reinvest her money in the nursing homes. The nursing home defendants' three assignments of error are sustained.
Having sustained plaintiff's first and second assignments of error, overruled her third assignment of error, and sustained all three of the nursing home defendants' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas in part, reverse the judgment in part, and remand this cause to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
TYACK, P.J., and BRYANT, J., concur.
[1] Hereinafter, we will refer to the corporate and partnership defendants collectively as the "nursing home defendants."
[2] R.C. 1707.41 provides in pertinent part as follows: "In addition to the other liabilities imposed by law any person who, by a written or printed circular, prospectus, or advertisement, offers any security for sale, or receives the profits accruing from such sale, is liable, to any person who purchased such security relying on such circular, prospectus, or advertisement, for the loss or damage sustained by such relying person by reason of the falsity of any material statement contained therein or for the omission therefrom of material facts * * *."
[3] R.C. 1707.43 provides in pertinent part: "Every sale or contract for sale made in violation of Chapter 1707 of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by such purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision."
[4] The trial court actually cited Ohio Adm. Code 1303:6-3-02(C). However, pursuant to a 2000 amendment, Ohio Adm. Code 1303:6-3-02 was reorganized such that former subsection (C) is now subsection (D).