**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**TRYG INTERNATIONAL INSURANCE COMPANY, LTD., Defendant–Appellee.**

No. 95–3436.

United States Court of Appeals,
Sixth Circuit.

Argued April 29, 1996.

Decided July 26, 1996.

Irene C. Keyse–Walker (argued), Arter & Hadden, Cleveland, OH, Michael L. Cohen (briefed), Preston Gates Ellis & Rouvelas Meeds, Washington, DC, for Plaintiff–Appellant.

Joseph D. Lonardo (argued and briefed), Vorys, Sater, Seymour & Pease, Columbus, OH, for Defendant–Appellee.

Before: MARTIN and SILER, Circuit Judges; HEYBURN, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Nationwide Mutual Insurance Company appeals the district court's dismissal of its breach of contract action against Tryg International Insurance Company, claiming that the district court erred in granting Tryg International's motion to dismiss for lack of personal jurisdiction. For the reasons set forth below, we AFFIRM.

Nationwide is an Ohio corporation engaged in the business of insurance and reinsurance. Tryg International is a Danish company, organized under Danish law, with its principal place of business in Lyngby, Denmark. Tryg International is an international insurer, reinsurer, and risk underwriter and does not own any subsidiaries in the United States, nor does it own any property here. It was, however, a member of a reinsurance pool operated by Nationwide. Specifically, Tryg International agreed to a three percent participation in Property Pool 920. Pool 920 had a proposed cap limit of $6,600,000.00. Pool participants provided reinsurance on underlying policies of catastrophe coverage for risks located throughout the United States, Canada, and the Caribbean Islands.

The relationship at issue in this case began when both parties attended a "Reinsurance Rendezvous" in Monte Carlo, Monaco, at which Nationwide invited Tryg International to participate in Pool 920. Eventually, Tryg

* The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation.

agreed to participate, and became one member of a group of international reinsurance companies who purchased participation in Pool 920. From its corporate headquarters in Ohio, Nationwide purchased reinsurance risks for the pool, collected premiums on those risks, deposited the collected premiums, adjusted pool losses, and paid claims made against the pool. Nationwide provided Tryg International with a quarterly accounting statement detailing the premiums collected and claims paid on Tryg International's behalf as a member of Pool 920. After offsetting claims paid from premiums collected, Nationwide submitted any surplus balances to Tryg International in Denmark. When this offset resulted in a net loss balance, Tryg International was contractually obligated to remit funds to Nationwide to cover the deficit.

In January of 1993, Tryg International discontinued its obligations pertaining to Pool 920. On January 24, 1994, Nationwide filed this breach of contract and declaratory judgment action, alleging that Tryg International failed to make payments due and owing in the amount of $610,047.92, and that it also failed to maintain a statutorily required collateral deposit in the amount of $725,-233.21. Soon thereafter, Tryg International filed a motion to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. The parties then conducted limited jurisdictional discovery, after which Nationwide filed its opposition to Tryg International's motion.

On March 8, 1995, the district court granted the motion to dismiss, holding that Nationwide had not established the required *prima facie* case that the district court had either general or specific personal jurisdiction over Tryg International. Nationwide timely filed the instant appeal.

The parties initially dispute—as they did in the district court—the burden of proof that Nationwide must carry to survive Tryg's 12(b)(2) motion to dismiss. In response to Tryg International's 12(b)(2) motion, the district court allowed some discovery, but did not hold an evidentiary hearing on the matter. As a result of this truncated procedure, Nationwide claims that it is required to establish only a *prima facie* case that personal

jurisdiction exists. *See Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991) (holding that plaintiff need only make a *prima facie* showing of personal jurisdiction where the district court allowed no discovery and decided the motion on the basis of factually conflicting affidavits). Relying on *Serras v. First Tennessee Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989), Tryg International claims that Nationwide must establish personal jurisdiction by a preponderance of the evidence, in light of the fact that the district court allowed discovery prior to ruling on Tryg International's 12(b)(2) motion. In *Serras,* we held that a plaintiff's burden is to establish jurisdiction by a preponderance of the evidence where the district court holds an evidentiary hearing on the matter. *Id.*

Arguably, this Circuit has not expressly determined the appropriate burden of proof for cases in which the district court permits at least some discovery but does not conduct an evidentiary hearing before ruling on a 12(b)(2) motion to dismiss. In *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978 (6th Cir.1992), this Court confronted precisely the same issue on the same procedural facts, and apparently viewed the question as an open one in this Circuit. However, because we believed that the plaintiff in *Conti* had not established even a *prima facie* case in favor of personal jurisdiction, we stated that we need not resolve the matter at that time. *Id.* at 980. In his dissenting opinion, Judge Boggs stated his view that this Circuit's precedent clearly requires a plaintiff to make only a *prima facie* showing that personal jurisdiction exists where the district court decides the issue without the benefit of an evidentiary hearing. *Id.* at 987 (Boggs, J., dissenting).

In this Circuit, where a court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal. *Theunissen,* 935 F.2d at 1458. Further, the pleadings are to be considered in a light most favorable to the plaintiff. *Id.* at 1459. However, in sharp contrast to the summary judgment procedure, the court does not weigh the controverting assertions of

the party seeking dismissal by 12(b)(2) motion.... [A] showing by a preponderance of the evidence is not necessary unless the trial court conducts an evidentiary hearing. [*American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988) ].

Were it necessary to decide this question, we would be inclined to agree that the plaintiff need only establish a *prima facie* case that personal jurisdiction exists over the defendant in a case such as this. *See American Greetings,* 839 F.2d at 1169 (stating that the burden on the plaintiff is "relatively slight" where the district court finds no need for an evidentiary hearing; *Welsh v. Gibbs,* 631 F.2d 436, 438–39 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981) (stating that where the jurisdictional issue is decided pursuant to a 12(b)(2) motion solely on the basis of written materials "the plaintiff should be required only to make a *prima facie* case of jurisdiction"). However, because we conclude that Nationwide has failed to carry even this lesser burden, we need not decide this issue.

■ Turning to the merits, we review the district court's dismissal for lack of personal jurisdiction *de novo.* *Tobin v. Astra Pharmaceutical Prods.,* 993 F.2d 528, 542 (6th Cir.), *cert. denied,* 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993). In the absence of an evidentiary hearing, we view the facts in a light most favorable to the nonmoving party when confronted with a 12(b)(2) motion to dismiss. *Market/Media Research, Inc. v. Union–Tribune Publishing Co.,* 951 F.2d 102, 104 (6th Cir.1991), *cert. denied,* 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992). In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists. *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 (6th Cir.1989) (citing *Southern Machine Co. v. Mohasco Indus.,* 401 F.2d 374, 376 n. 2 (6th Cir.1968)), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990). Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state,

*Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445–47, 72 S.Ct. 413, 418–19, 96 L.Ed. 485 (1952), or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *Conti,* 977 F.2d at 981. A valid assertion of personal jurisdiction must satisfy both the state long-arm statute, and constitutional due process. *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994).

■ The Ohio long-arm statute's reach, *see* Ohio Rev.Code § 2307.382, extends to the constitutional limits of the Due Process Clause. *American Greetings,* 839 F.2d at 1167. Therefore, the two inquiries are merged, and we need only determine whether the assertion of personal jurisdiction over Tryg International violates constitutional due process. *See Third Nat'l Bank v. WEDGE Group Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990).

■ The Due Process Clause requires that the exercise of personal jurisdiction in each case comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). In broad terms, the assertion of personal jurisdiction satisfies due process if "the defendant purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), such that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ We quickly dispense with Nationwide's claim that "general" personal jurisdiction exists over Tryg International as a result of Tryg International's "continuous and systematic" conduct within Ohio. To support its claim that general jurisdiction exists, Nationwide relies on the following contacts be-

tween Tryg International and the State of Ohio: 1) Tryg International's prior reinsurance agreement with State Auto Mutual Insurance Group, another Ohio company; 2) a prior 1982 reinsurance agreement between Tryg International and Nationwide; and 3) Tryg International's participation in Property Pool 920. We do not believe these contacts establish the kind of "continuous and systematic" conduct required to support general personal jurisdiction over the defendant. *See Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1045–46 (2d Cir.1991) (holding that thirteen business trips of short duration over the course of eighteen months did not constitute "continuous and systematic" solicitation of business in the state of New York). Tryg International's relationship with State Auto lasted one year, was negotiated by a French company, and Tryg International did not direct its activities toward the forum state in order to enter the contract. Further, Tryg International's relationship with Nationwide, which apparently began in 1975, included a brief reinsurance agreement in 1982, and culminated in Tryg International's participation in Pool 920, can be characterized as sporadic at best. None of the agreements required Tryg International to send its representatives to Ohio to conduct any business in the state, and Tryg International's performance under the agreements did not require it to conduct substantial activities in Ohio.

Nationwide places particular emphasis on the fact that its 1982 reinsurance agreement contained a service of suit clause which rendered Tryg International amenable to suit in Ohio. However, we do not find this fact to be overly persuasive. The Pool 920 reinsurance agreement, which Tryg International did not sign, does not contain a service of suit clause.[1] In addition, there is no evidence that Nationwide ever used the service of suit clause to compel a foreign corporation to appear in court in Ohio. On these facts, we cannot say that Tryg International has en-

gaged in "continuous and systematic" business in Ohio such as would render Tryg generally amenable to suit in that state.

 In contrast with general jurisdiction, specific jurisdiction often may be premised on a single act of the defendant. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1957). The nature and quality of the act, as well as the circumstances surrounding its commission, must be examined to determine whether personal jurisdiction exists in each case. *International Shoe*, 326 U.S. at 318, 66 S.Ct. at 159. In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158).

This Circuit has devised a three-part test for determining the "outer limits of in personam jurisdiction based on a single act:"

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Payne v. Motorists' Mutual Ins. Cos.*, 4 F.3d 452, 455 (6th Cir.1993) (quoting *Southern Machine Co.*, 401 F.2d at 381). Nationwide relies on the following facts to support its claim that Tryg International has purposefully availed itself of the privilege of doing business in Ohio under the first element of the *Southern Machine* test:

> 1) Tryg International sent a letter to Nationwide, after meeting with Nationwide in Monte Carlo, agreeing to assume a three percent share of Pool 920,

---

1. Apparently, the relationships and agreements arising out of the world-wide reinsurance market are highly informal and often are not memorialized in a writing. Even where a writing is in evidence, it is often a loosely worded, informal document. Therefore, the fact that Tryg did not

sign a written document prior to participating in Pool 920 is not all that unusual. Of course, the foregoing also undermines the significance of the presence or absence of a service of suit clause in either the 1982 reinsurance agreement or the Pool 920 agreement.

2) Pursuant to Tryg International's participation in the reinsurance pool, it knew that Nationwide, in its capacity as underwriter for the pool, would:

 a) underwrite reinsurance risks on behalf of the pool,

 b) collect premiums on those risks and deposit them into an Ohio bank account,

 c) adjust pool losses and pay claims in Ohio,

 d) provide a quarterly accounting statement in Ohio indicating premiums collected and claims paid on behalf of the pool, and

 e) require Tryg International to remit funds to Nationwide in Ohio to cover net losses,

3) Tryg International, as a participant in Pool 920, entered into reciprocal reinsurance agreements with Nationwide,

4) After the agreement collapsed, Tryg International sent an agent to Ohio in an attempt to resolve the dispute,

5) Tryg International solicited business from Nationwide during the negotiations as a potential method of resolving the current dispute, and

6) Tryg International realized a profit from its contacts with Ohio and affected commerce in Ohio as a result of the reinsurance agreement, which was heavily regulated by Ohio statutory law.

Tryg International does not dispute these facts, although it recharacterizes several of them in a light more favorable to its position. Tryg points out that the agreement was actually negotiated in Monte Carlo where Nationwide had voluntarily attended a "Reinsurance Rendezvous," and that Tryg International has never had an office, owned property, solicited business, or sent agents for the purpose of soliciting business in the state of Ohio. Nationwide does not dispute these facts.

In determining whether these facts give rise to personal jurisdiction over Tryg International in this case, the first criterion in the *Southern Machine* test requires that a defendant purposely avail itself of the privilege of doing business in the forum state. Our discussion in *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d at 1300, provides a helpful starting point for our analysis:

"This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183, quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) and *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. at 568. There is a difference between what *World–Wide Volkswagen* calls a mere "collateral relation to the forum State," 444 U.S. at 299, 100 S.Ct. at 568, and the kind of substantial relationship with the forum state that invokes, by design, "the benefits and protections of its laws." *Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240....

. . . .

The Supreme Court has emphasized, with respect to interstate contractual obligations, that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182.

The Supreme Court has also recognized, however, that the existence of a contract with a citizen of the forum state, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant. *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185. Rather, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. at 2185–86. Further, "[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984) (quoting *Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239–40). Therefore, many of the

acts that Nationwide alleges give rise to jurisdiction over Tryg International, which were in fact actions undertaken by Nationwide pursuant to its contract with Tryg, are irrelevant for determining whether personal jurisdiction over Tryg exists. Instead, we must focus on the actions of Tryg International in the negotiation and performance of the reinsurance agreement to determine whether it should be subject to suit in Ohio.

Here, Tryg International is one of a large group of foreign insurance companies participating in Pool 920. All of the negotiations leading up to Tryg International's participation in the pool occurred in Monte Carlo, at conferences attended by Nationwide. Relying on this fact, Tryg International points out that it did not solicit any business from Nationwide in Ohio. While this is true, and should be given some weight in our analysis, we explained in *Southern Machine* that the dispositive fact is not whether the plaintiff or the defendant initiated the contact between the parties, but whether the defendant ultimately "chose to deal" with the plaintiff. *Southern Machine*, 401 F.2d at 382.

Tryg International also points out, as we noted above, that many of the facts on which Nationwide relies are simply activities undertaken by Nationwide in order to perform its obligations under the contract. Tryg claims that these actions should not be considered in determining whether personal jurisdiction exists, and instead points out that Tryg's only performance in Ohio under the reinsurance agreement was to remit funds to an account in Ohio in the advent of a quarterly net loss and to maintain certain minimum funds on account in Ohio as collateral. We agree. As the district court pointed out, Nationwide's status as an underwriting agent for Pool 920 and the actions taken by it thereunder cannot be attributed to Tryg International.

Further, we do not believe that Tryg International's action in sending a representative to Ohio to negotiate a settlement renders the exercise of personal jurisdiction appropriate in this case. The district court noted, and we agree, that attributing significance (for the purposes of determining whether personal jurisdiction exists) to a single entry into the state in order to negotiate a resolution of a prior dispute would create a disincentive for foreign corporations to pursue a resolution in what may be the most efficient manner possible, namely, travelling to an adversary's headquarters and negotiating there. *See Wisconsin Elec. Mfg. Co. v. Pennant Prods. Inc.*, 619 F.2d 676, 678–79 n. 10 (7th Cir.1980) (noting that courts have refused to find that personal jurisdiction exists where the defendant's contact with the forum was limited to an attempt to resolve the parties' dispute).

Nationwide places great emphasis on the Supreme Court's holding in *McGee v. International Life Ins. Co.*, arguing that the district court erred in distinguishing *McGee* from the case at bar. The *McGee* case represents perhaps the broadest application of the test set forth in *International Shoe* and later cases. *Accord Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1421 (10th Cir.1988); *Dollar Savings Bank v. First Security Bank*, 746 F.2d 208, 212 (3d Cir.1984). In *McGee*, the Supreme Court held that California courts had jurisdiction over a Texas corporation engaged in the business of reinsurance in an action by a life insurance policy beneficiary seeking to recover benefits from a policy purchased by a California resident. 355 U.S. at 223, 78 S.Ct. at 201. The Court reasoned that the State of California had a "manifest interest" in ensuring redress for its residence, and that fairness concerns weighed in favor of the assertion of personal jurisdiction by the California state court because many individual claimants would not be able to afford to bring suit in the defendant's home state of Texas to recover on "small or moderate" claims. *Id.*

The concerns which led the Court in *McGee* to conclude that the Texas corporation was amenable to suit in California are not present in the instant case. While the State of Ohio does have an interest in providing an effective means of redress for its residents, including a corporation such as Nationwide, international insurance companies like Nationwide can afford to travel to a defendant corporation's home state or country in order to recover if the situation so

requires. Nationwide is a large insurance corporation dealing at arms-length worldwide with other similar insurance corporations, and there is no threat here that Nationwide will not be able to afford to travel to the defendant's jurisdiction to obtain redress, and Nationwide does not claim otherwise.

We note also that the Supreme Court has cautioned:

> The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.

*Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *see also Tobin,* 993 F.2d at 545. Unlike *McGee,* and similar to the defendant in *Asahi,* Tryg is a corporation headquartered in another country. Special concerns arise when a plaintiff attempts to bring a foreign defendant within our national borders, concerns not at issue in *McGee.* Accordingly, this case is easily distinguished from the Court's decision in *McGee.*

For similar reasons, the fairness concerns raised in *McGee* are not present here. Nationwide traveled to Monaco to participate in the international "Reinsurance Rendezvous," at which it initiated its relationship with Tryg International. The product of this initial contact was an arms-length business deal resulting in Tryg's participation in Pool 920. Unlike the situation in *McGee,* Nationwide can easily travel to the defendant's home jurisdiction to seek redress, and requiring it to do so does not implicate fairness concerns.

Finally, we note that Nationwide does not suggest that it might be unable for some reason to obtain just and equitable relief if required to pursue its claim in Monaco or Denmark. In this day and age, in which the legal systems of many countries are equally capable of rendering just and fair results, we see no reason to suspect that Nationwide cannot travel to Monaco or to Tryg International's home country of Denmark and, if merited, obtain compensation for injuries arising out of Tryg's alleged breach of the contract.

In sum, we conclude that Tryg International did not "purposely avail" itself of the privilege of acting with the State of Ohio. In addition, it would be unreasonable to exercise jurisdiction over Tryg International in this case, given the very minimal connections between the defendant and the State of Ohio.

Accordingly, the district court's award of summary judgment in favor of Tryg International is AFFIRMED.