**HEALTHCARE CAPITAL, LLC, Plaintiff,**

v.

**HEALTHMED, INC., et al., Defendants.**

**Case No. 02–CV–688.**

United States District Court, S.D. Ohio, Eastern Division.

Aug. 7, 2002.

Matthew A Kairis, Jones Day Reavis & Pogue, Columbus, OH, for Plaintiff.

Laura Goodman Kuykendall, Vorys Sater Seymour & Pease, Columbus, OH, for Defendants.

### OPINION AND ORDER

MARBLEY, District Judge.

## I.  INTRODUCTION

This matter is before the Court on the Defendants' Motion to Dismiss on Jurisdictional Grounds Only, filed on July 24, 2002.  On that same date, the Plaintiff filed a Memorandum in Support of Jurisdiction.  Subsequently, the Defendants filed a Memorandum in Opposition to the Plaintiff's Memorandum in Support of Jurisdiction, and the Plaintiff filed a Response to Defendants' Motion to Dismiss.  The jurisdictional issue has been placed on an expedited briefing schedule due to the Plaintiff's pending motion for a preliminary injunction, currently set for hearing on September 3, 2002.

For the following reasons, the Court **GRANTS** the Defendants' Motion to Dismiss.

## II.  BACKGROUND

### A.  Facts

The Plaintiff, Healthcare Capital, LLC ("HCC"), is a Nevada limited liability company with its principal place of business in Franklin County, Ohio.  Defendant HealthMed, Inc. ("HealthMed") is a Nevada corporation with its principal place of business in Los Angeles County, California.  Defendant Mitchell Stein ("Stein"), a California resident, is an officer and director of HealthMed, as well as the majority shareholder of HealthMed.  Emanual Barling, Jr. ("Barling"), a California resident, is the Chief Executive Officer of HealthMed.  The Plaintiff alleges that

Barling's interests are so aligned with Stein's interests that he constitutes an agent or representative of Stein in his dealings with HealthMed and other institutions. Defendant Swab Financial, LLC, fka TSI Technologies and Holdings, LLC ("Swab"), is a California limited liability company with its principal place of business in Los Angeles County, California. At all times relevant, HealthMed was the sole member of Swab. Swab has owned shares of stock in Med Diversified, Inc. ("Med Diversified"), a publicly traded company, among its other assets.

### 1. HCC's Allegations

HCC asserts that it currently owns 667 shares of preferred stock of HealthMed, and that it has held those shares continuously since 1998. HCC also claims that all of the remaining shares in HealthMed are held by entities that are controlled by Stein or his wife, Tracy Hampton. HCC further contends that it is a minority shareholder in Med Diversified. HCC claims that in early 1999, Swab and Stein, or entities controlled by Stein, were the majority shareholders of Med Diversified.

According to HCC, Stein and Barling, on behalf of themselves and on behalf of HealthMed and Swab, directed letters, facsimiles, and telephone calls to HCC in Ohio in an attempt to solicit HCC's participation in a business association with the Defendants. HCC also claims that Stein visited Ohio in pursuit of a business relationship with HCC at least three times. As a result of their negotiations, HCC and HealthMed entered into an agreement known as the Alliance and Release Agreement ("Agreement") in January 1998. According to Donald Ayers, a member of HCC, the purpose of the Agreement, which he says was executed in Ohio, was to establish a joint venture between HCC and HealthMed.

HCC contends, on information and belief, that, as the sole member of Swab, HealthMed, through Stein and Barling, caused Swab to transfer substantial assets in the form of common stock of Med Diversified to San Diego Asset Management without notice to, or approval of, Heathmed's shareholders, including HCC. HCC alleges that Stein, Barling, and Swab transferred such stock and received payment for the sale in an effort to: (1) convert the proceeds, and then hide those proceeds from HCC; and (2) to conceal the sale of the stock from HCC, the Internal Revenue Service, and federal and state regulatory authorities. According to HCC, San Diego Asset Management defaulted on the payment for the sale of the Med Diversified stock. Swab, through Stein and Barling, filed a lawsuit against San Diego Asset Management to recover the purchase price, but then dismissed the lawsuit without obtaining payment of the full purchase price of the stock.

HCC also alleges that Stein and Barling engaged in a number of improper and illegal securities activities pertaining to the Med Diversified stock. In particular, HCC contends that Stein and Barling engaged in what they refer to as a "pump and dump" scheme,[1] conducted insider trading, and filed misleading and fraudulent reports with the Securities and Exchange Commission ("SEC"). HCC states that such actions exposed HealthMed and Swab to the risk of securities law liabilities. HCC adds that the Defendants un-

---

1. According to HCC, this scheme entailed Stein and Barling selling a substantial number of shares of Med Diversified common stock while, at the same time, actively attempting to generate interest in the purchase of such stock through presentations to venture capital companies and other institutional or individual investors. Neither Stein nor Barling revealed that they were selling their Med Diversified stock at the same time that they were marketing to the stock to investors.

dertook these improper activities for their own personal gain, and in direct opposition to the legitimate interests of HCC as a minority shareholder of HealthMed. HCC claims that, unaware of such improper conduct, it opted to retain its stock with the consequence that its holdings became worthless because of the Defendants' actions.

Finally, HCC alleges that Stein and Barling converted HealthMed's and Swab's assets to pay for personal expenses. HCC contends that the Defendants transferred or deposited HealthMed and Swab assets to various persons and entities for the purpose of paying for personal expenses, and for the purpose of fraudulently conveying or hiding assets and funds belonging to the Plaintiff. In addition, HCC claims that Stein transferred HealthMed and Swab assets to offshore bank and brokerage accounts and/or entities controlled by Stein, for the purpose of concealing, hiding, and withholding the transfers and assets from HCC and HealthMed's and Swab's other shareholders.

### 2. Defendants' Allegations

In response to all of HCC's allegations, the Defendants contend that HCC no longer owns HealthMed preferred stock, and, therefore, has no basis upon which to challenge any of the Defendants' actions with respect to that stock. HealthMed contends that it redeemed HCC's stock for $50,000 in January 2000, and that HCC has not owned stock in HealthMed since that time.[2] HCC does not deny receiving payment from HealthMed for $50,000, but claims that the payment was for accrued interest owed on a $750,000 loan made to HealthMed in March 1999, not for redemption of the stock.

### B. Procedural Background

On May 10, 2002, National Century Financial Enterprises, Inc. ("NCFE") filed a complaint with this Court (Judge Holschuh) against Swab, TSI Technologies and Holdings Ltd., LLC, and Barling ("NCFE Litigation").[3] NCFE is owned by Donald Ayers, Rebecca Parrett, Lance Poulsen, and Barbara Poulsen, who also own HCC. The NCFE Litigation relates to a dispute arising from an agreement entered into between NCFE and Med Diversified pursuant to which Med Diversified was to have developed and maintained specialized software for use by NCFE in exchange for consideration that was to be provided by NCFE.

On May 17, 2002, HealthMed filed a Complaint against HCC, among other related defendants, in Superior Court of the State of California for the County of Los Angeles—Central District ("California Litigation I").[4] In addition to HCC itself, the defendants included Ayers, Parrett, and the Poulsens, NCFE, affiliates of NCFE, and other entities owned by Ayers, Parrett, and the Poulsens. HealthMed filed the California Litigation I seeking a declaration by the California court stating that HCC has no ownership interest whatsoever in HealthMed, and that because HCC has no ownership interest, it is not entitled to review the accounting and financial records of HealthMed. HealthMed also brought claims of fraudulent deceit, intentional interference with prospective eco-

---

**2.** In their Motion to Dismiss on Jurisdictional Grounds Only, the Defendants expressly reserved any and all other defenses, presumably including those based on factual issues. For purposes of the present motion, however, the Defendants limited their allegations to matters relevant to the determination of whether this Court has jurisdiction.

**3.** The NCFE Litigation is styled *National Century Financial Enterprises, Inc. v. Swab Financial, LLC, et al.*, Case No. 02–CV–00463.

**4.** The California Litigation I is styled *HealthMed, Inc. v. Intercontinental Investment Associates, Ltd., et al.*, Case No. BC274140.

nomic advantage, unfair business practices, unjust enrichment, and breach of oral contract against HCC and the other defendants in that case.

On May 24, 2002, HCC filed a complaint against HealthMed in the First Judicial District Court of the State of Nevada ("Nevada Litigation").[5] In its complaint, HCC brought claims of: (1) breach of contract; (2) violation of records inspection statute; (3) breach of fiduciary duty; and (4) appointment of receiver/custodian against HealthMed. On June 7, 2002, HCC filed an amended complaint. In its amended complaint, HCC eliminated the breach of fiduciary duty claim, and sought two forms of relief: (1) specific performance of HealthMed's alleged duty to convert HCC's preferred stock to common stock; and (2) an order declaring that HCC is entitled to review the accounting and financial records of HealthMed, along with the corporate records of HealthMed, including but not limited to, the bylaws and stock ledger. On June 11, 2002, HealthMed filed a Motion to Dismiss the Amended Nevada Complaint on the basis that HCC did not hold any shares in HealthMed and, therefore, had no right to either challenge HealthMed's corporate conduct or review its corporate records.

On June 12, 2002, HCC filed an action in the Court of Common Pleas of Franklin County, Ohio against HealthMed, Stein, and Barling ("Ohio Litigation").[6] The Ohio Litigation contained essentially the same allegations as the original Nevada Complaint.

On July 1, 2002, HCC filed an Opposition to HealthMed's Motion to Dismiss in Nevada. In its pleading, HCC asked for discovery to proceed pursuant to the Nevada Rules of Civil Procedure.

On July 2, 2002, Swab filed a Complaint in Superior court of the State of California for the County of Los Angeles—Central Division against NCFE, Millenium Health Group, and others for securities fraud and manipulation relating to shares of Med Diversified ("California Litigation II").[7]

On July 12, 2002, HealthMed removed the Ohio Litigation from state court to this Court. Subsequently, on July 18, 2002, HCC filed its First Amended Complaint, adding Swab as a party defendant. Through the First Amended Complaint, HCC asserts the following causes of action: (1) breach of fiduciary duty; (2) fraud; (3) conspiracy; (4) conversion; and (5) fraudulent transfer under the Ohio Fraudulent Transfer Act, Ohio Rev.Code §§ 1336.01 *et seq.* HCC seeks an injunction against disposing of assets under Ohio Rev.Code § 1336.07, injunctive attachment, a permanent injunction, and unjust enrichment and restitution as relief for its claims. Along with its First Amended Complaint, HCC also filed its Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction, currently pending with this Court.

On July 19, 2002, this Court held a conference with the parties pursuant to Local Rule 65.1, and denied HCC's Motion for a Temporary Restraining Order. During the conference, the Defendants raised the question of whether this Court has jurisdiction to entertain the Plaintiff's Motion for a Preliminary Injunction. This

---

**5.** The Nevada Litigation is styled *HCC Capital, LLC v. HealthMed, Inc.,* Case No. 02–00848A.

**6.** The Ohio Litigation was styled *HCC Capital, LLC v. HealthMed, Inc., et al.,* Case No. 02CVC06–6525.

**7.** The California Litigation II is styled *Swab Fin., LLC v. Chartwell Diversified Servs., Inc.,* et al., Case No. BC276881.

matter is now before the Court on the Defendants' Motion to Dismiss on Jurisdictional Grounds Only.

## III. STANDARD OF REVIEW

The Defendants move to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure.[8]

### A. Rule 12(b)(1)

Pursuant to Fed.R.Civ.P. 12(b)(1), a defendant may challenge the Court's subject matter jurisdiction. In such a challenge, the plaintiff has the burden of proving the Court's subject matter jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir.1986). In the context of a Rule 12(b)(1) motion, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A Rule 12(b)(1) motion to dismiss will be granted only if, taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim.

### B. Rule 12(b)(2)

Similar to its 12(b)(1) counterpart, Fed.R.Civ.P. 12(b)(2) allows a defendant to challenge the Court's jurisdiction over the person. When such a motion is filed, "[t]he party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002)). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir.1974)). When the Court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing on the issue of personal jurisdiction, however, the plaintiff " 'need only make a *prima facie* showing of jurisdiction.' " *Bird*, 289 F.3d at 871 (quoting *Neogen Corp.*, 282 F.3d at 887) (internal citation omitted). The plaintiff can make this *prima facie* showing by " 'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction.' " *Neogen Corp.*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987)).

In deciding a Rule 12(b)(2) motion to dismiss, the Court is to construe the facts in the light most favorable to the non-moving party. *Id.* Significantly, the Court is not to weigh the controverting assertions of the party seeking dismissal. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996) (citing *Theunissen*, 935 F.2d at 1459). This refusal to weigh the defendants' controverting assertions is necessary to prevent non-resident defendants from avoiding jurisdiction simply by filing an affidavit that denies all jurisdictional facts. *Id.* (citing *Theunissen*, 935 F.2d at 1459).

## IV. DISCUSSION

The Defendants seek dismissal of the Plaintiff's Complaint on three alternative

---

8. The Defendants assert that they are also seeking to dismiss the action pursuant to Fed. R.Civ.P. 12(b)(3) based upon improper venue. In their pleadings, however, the Defendants do not argue that the Southern District of Ohio, Eastern Division constitutes an improper venue. Rather, in connection to their other jurisdictional arguments, the Defendants contend only that either California or Nevada would be a more convenient venue for resolution of the Plaintiff's claims.

grounds: (1) application of the "first-to-file" rule; (2) abstention; and (3) lack of personal jurisdiction over the Defendants. The Court will address each of these arguments in turn.

## A. First–to–File Rule

■ First, the Defendants contend that this Court should dismiss the Plaintiff's Complaint because those claims should proceed as part of either the California I or Nevada Litigations, both of which were filed well before this case was filed. The basis of the Defendants' argument is that all of the Plaintiff's claims hinge on a preliminary determination of whether HCC continued to own stock in HealthMed after HealthMed's $50,000 payment to HCC in January 2000—an issue that is already before the California and Nevada state courts. As a preliminary matter, the Court finds that the Defendants are correct that all of the Plaintiff's claims before this Court hinge on a determination of whether the Plaintiff continued to own shares of stock in HealthMed after January 2000. If the Defendants are correct that the Plaintiff's stock was redeemed in January 2000 and HCC has not owned any stock in HealthMed or Med Diversified since that time, then all of HCC's claims must fail.

Pursuant to the first-to-file rule, when suits involving substantially the same issues and parties are filed in courts of concurrent jurisdiction, the court in which the first action was filed should proceed to judgment. *Plating Resources, Inc. v. UTI Corp.*, 47 F.Supp.2d 899, 903 (N.D.Ohio 1999) (citing *In re Burley*, 738 F.2d 981, 988 (9th Cir.1984) and *Barber–Greene Co. v. Blaw–Knox Co.*, 239 F.2d 774, 778 (6th Cir.1957)). "The first-to-file rule is a well-established doctrine that encourages comity among *federal courts* of equal rank." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 2001 WL 897452, *3, 16 Fed. Appx. 433, 437 (6th Cir. July 31, 2001) (emphasis added). As such, the rule applies only when substantially similar actions have been filed in two different federal district courts. *Id.* The Court finds that, while the Defendants are correct that the determination of HCC's claims hinges on the determination of an issue already properly before two other courts in cases involving substantially the same parties, the first-to-file rule does not apply under these circumstances. Here, the actions similar to the matter *sub judice* were previously filed in *state* court, not federal court. Thus, the first-to-file doctrine is inapplicable in this case.[9]

Therefore, the Court **DENIES** the Defendants' Motion to Dismiss based upon an application of the first-to-file rule.

## B. Abstention

■ Second, the Defendants argue that even if the first-to-file rule as such is inapplicable under these circumstances, this Court should abstain from exercising its jurisdiction over the Plaintiff's claims based on the previously filed Nevada and California I Litigations. The Court focuses its analysis with reference to the Nevada Litigation.

The Supreme Court first articulated the doctrine now known as *Colorado River* abstention in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and then refined it in *Moses H. Cone*

---

**9.** The Court notes that, at various points in its pleadings, HCC points out that the case that was truly filed first was filed here in the Southern District of Ohio before Judge Holschuh. While that case involves substantially the same parties as this matter, it involves totally distinct issues of fact and law. Thus, for purposes of the first-to-file rule, that case, National Century Financial Enterprises, Inc. v. Swab Financial, LLC, et al., Case No. 02–CV–00463, is irrelevant.

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Pursuant to the doctrine, federal district courts may abstain from hearing certain cases in deference to pending state court cases. *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. As the Sixth Circuit Court of Appeals has construed it, "[i]n *Colorado River*, the Supreme Court noted that, despite the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir.1998) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236). In *Moses Cone*, the Supreme Court emphasized that abstention to avoid duplicative litigation is permissible only in exceptional circumstances, and that the mere existence of parallel state and federal proceedings is insufficient to justify abstention. *Moses Cone*, 460 U.S. at 14–15, 103 S.Ct. 927.

In determining whether *Colorado River* abstention is appropriate, this Court is to consider five factors, which are to be carefully weighed and balanced against each other rather than viewed as a mechanical checklist. Specifically, the Court is to consider: (1) whether federal or state law provides the basis for decision of the case; (2) whether either court has assumed jurisdiction over any *res* or property; (3) whether the federal forum is less convenient to the parties; (4) avoidance of piecemeal litigation; and (5) the order in which jurisdiction was obtained. *Romine*, 160 F.3d at 340–41 (citing *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236).

Before delving into an analysis of the five factors to determine whether abstention is proper, however, the Court must first determine that the concurrent state and federal actions are actually parallel. *Id.* at 339. If the actions are not parallel, then the Court's analysis must end, as "the district court would have nothing in favor of which to abstain." *Baskin v. Bath Township Bd. of Zoning*, 15 F.3d 569, 571 (6th Cir.1994) (citing *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir.1984)). For an action to be parallel, there must be identity of parties and issues in the federal and state court actions. *Id.* at 572. Exact parallelism, however, is not required; " '[i]t is enough if the two proceedings are substantially similar.' " *Romine*, 160 F.3d at 340 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). Furthermore, the actions must be parallel as they currently exist; it is not enough that the state court proceeding *could* be modified to be parallel to the federal action. *Baskin*, 15 F.3d at 572 (citing *Crawley* for the proposition that "the district court must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised"). Essential to the determination of whether the two actions are parallel is whether resolution of the state court action will provide complete relief for the federal action. *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir.1990) (finding that the district court should not have abstained when additional issues not addressed by the state litigation were raised in the federal complaint).

HCC contends that the instant action is not parallel to the Nevada Litigation because there is neither identity of parties nor identity of issues. This Court disagrees. First, as to the issue of identity of the parties, the only difference between the parties in the Nevada action and those named here is that, here, in addition to HealthMed, Stein, Barling, and Swab are also named. Stein and Barling, however, according to HCC's own pleadings, constitute the majority shareholder, officer, and

director of HealthMed. Thus, their interests are wholly aligned with those of HealthMed. In addition, HealthMed is the sole member of Swab. Thus, any wrongdoing perpetrated by Swab was done so only by and through HealthMed, which acts through Stein and Barling. Clearly, the defendants named in this case are substantially similar to those in the Nevada Litigation. Furthermore, HCC cannot defeat the Defendants' claims that the actions are parallel simply by pointing to the addition of certain defendants whose claims are aligned with those of the defendants in the state case. As the *Romine* Court noted, " '[i]f the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties.'" *Romine*, 160 F.3d at 340 (quoting *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir.1985)). Therefore, although HCC has named additional defendants in the instant action, the Court finds that the parties here and in the Nevada Litigation are, nonetheless, substantially similar so as to be parallel.

Second, the Court finds that there is identity of issues in the two actions. On the face of the complaints, HCC is correct that more claims are asserted in this action than are being adjudicated in the Nevada Litigation. All of the claims, however, arise out of a common nucleus of operative facts. Specifically, both here and in the Nevada Litigation, HCC brings claims against HealthMed based on the alleged securities violations commited by HealthMed and its officers and directors. Furthermore, HCC's success in both actions hinges on the determination of whether HCC has a valid interest in the shares of stock that were the object of the alleged improprieties. In short, the claims alleged here that are not specifically set forth in the Nevada Litigation are so inextricably intertwined with the claims set forth there as to comprise parallel actions.

■ Having found that the federal and state actions are, in fact, parallel, the Court turns to the question of whether *Colorado River* abstention is appropriate. The Court finds that every factor set forth in *Colorado River* weighs in favor of abstention. As a threshold consideration, although the matter *sub judice* was removed to this Court on the basis of federal question jurisdiction, virtually all of the claims alleged by HCC are premised on state law. Second, it is the Nevada court, not this Court, that has control over the financial and corporate records to which HCC seeks access, and that provide the proof that is necessary for HCC to succeed on its claims of fraud, breach of fiduciary duty, and conversion. Third, Ohio is a far less convenient forum for the Defendants than is Nevada. Clearly, Nevada is more convenient for HealthMed, as HealthMed is incorporated in Nevada. In addition, Nevada is more convenient for Stein and Barling, both of whom are residents of California. Furthermore, while Ohio may be a more convenient forum for HCC, the fact that HCC is already engaging in litigation in Nevada demonstrates to the Court that it is not particularly inconvenient for HCC to litigate there.

Fourth, abstention by this Court would aid in the avoidance of piecemeal litigation. Currently, there are two other cases pending in which the determination of whether HCC owned stock in HealthMed after January 2000 is essential. Abstention would mean avoiding the complications that would arise if this Court were to reach a different conclusion regarding that issue than the either the Nevada or California court. Fifth, jurisdiction was obtained by the Nevada court approximately seven weeks before this Court obtained jurisdic-

tion over substantially the same issues and parties.

Finally, the Court looks to *Colorado River* itself, which cautioned that abstention is appropriate only when extraordinary circumstances exist. *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236. Here, extraordinary circumstances exist simply by virtue of the fact that substantially the same parties are currently engaging in litigation that involves substantially the same issues in three different courts (Nevada, California, and the Southern District of Ohio) and four different actions (Nevada Litigation, California I Litigation, California II Litigation, and the matter *sub judice* ). For this Court to refuse to abstain from hearing this case would be to permit the parties to continue to engage in such inefficient litigation practices that waste precious judicial resources. Furthermore, to refuse to abstain under these circumstances would be to encourage parties to engage in forum shopping by continuing to file substantially similar litigation under various guises until they receive the quickest and most desirable ruling. This Court cannot fathom such a result.

Therefore, the Court **GRANTS** the Defendants' Motion to Dismiss pursuant to the *Colorado River* abstention doctrine.

## C.  Personal Jurisdiction

█ The Defendants argue that, even if the Court were to find that abstention is inappropriate, it should nonetheless dismiss the Plaintiff's Complaint for lack of *in personam* jurisdiction over the Defendants. They support their motion with affidavits of both Stein and Barling in which the Defendants deny virtually any fact that would support jurisdiction.[10] Based on the following discussion, the Court finds that the Defendants are cor-

rect that even if abstention were inappropriate, it would nonetheless grant the Defendants' Motion to Dismiss for lack of personal jurisdiction.

To determine whether this Court may exercise personal jurisdiction over the Defendants, the Court must engage in a two-part inquiry. First, the Court must address whether Ohio's long-arm statute, Ohio Rev.Code § 2307.382, permits the exercise of jurisdiction over the defendants. *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002). Second, the Court must determine whether the exercise of jurisdiction over the defendants would deny the defendants due process of law. *Id.* (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992)). The Sixth Circuit has recognized that Ohio's long-arm statute is not coterminous with the limits of due process. *Id.* (citing *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir.2000)). Nevertheless, the Sixth Circuit has found that "in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, [this Circuit has] consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.'" *Id.* at 871–72 (quoting *Calphalon Corp.,* 228 F.3d at 721) (internal citations omitted). This Court shall focus its analysis accordingly.

General jurisdiction is proper where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l*

---

**10.** For the reasons set forth in *Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir. 1991), and *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996), this Court cannot consider the Defendants' affidavits in determining whether the Plaintiff has met its burden of proving that personal jurisdiction exists. *See* discussion *supra* Part III.B.

*Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989) (internal citation omitted); *see Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.,* 91 F.3d 790, 793 (6th Cir.1996) (stating that general jurisdiction exists when the defendant's "continuous and systematic" conduct within the forum state renders the defendant amenable to any lawsuit brought in that state). Without doubt, HCC has not demonstrated that the Defendants maintained any sort of continuous or systematic conduct within Ohio. Therefore, the Court turns to the question of whether specific jurisdiction is proper.

Specific jurisdiction may exist in cases where the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *Nationwide,* 91 F.3d at 793. The Sixth Circuit has established the following three-part test to determine whether specific jurisdiction is proper: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the acts of the defendant or consequences caused by him must have a substantial enough connection with the forum state to make exercise of personal jurisdiction reasonable. *Id.* at 794 (citing *Payne v. Motorists' Mut. Ins. Cos.,* 4 F.3d 452, 455 (6th Cir.1993)).

With respect to the first part of the analysis, the Sixth Circuit has emphasized that " '[t]his "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.' " *Id.* at 795 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (internal quotations omitted). Furthermore, the Supreme Court has recognized that:

the existence of a contract with a citizen of the forum state, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant. Rather, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."

*Nationwide,* 91 F.3d at 795 (quoting *Burger King,* 471 U.S. at 478–79, 105 S.Ct. 2174).

The Court recognizes that "when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state." *Neal v. Janssen,* 270 F.3d 328, 333 (6th Cir. 2001). The Court also acknowledges that the Defendants directed numerous telephone calls, facsimiles and letters to HCC in Ohio while negotiating the agreement that formed the basis of HCC's ownership of stock in Med Diversified, and that Stein even visited Ohio on at least a few occasions. Nonetheless, the Court finds that the Defendants neither purposefully availed themselves of the benefits of acting in Ohio for the purposes of this litigation, nor does the cause of action arise from the defendant's activities in the forum state, as it must for personal jurisdiction to exist. In its briefs on the issue of jurisdiction, HCC contends that the fraudulent communications directed at HCC in Ohio form the "heart" of its causes of action. A review of the Complaint, however, belies this assertion.

The First Claim for Relief in the Complaint sets forth a cause of action for

breach of fiduciary duty. The claim is based on Stein's and Barling's alleged improper control and use of corporate assets for their own personal gain to the detriment of HCC as a shareholder of HealthMed. Specifically, HCC alleges that Stein and Barling dissipated corporate assets, mismanaged corporate assets, failed to protect corporate assets, and acted for their own personal interests. None of this conduct is alleged to have occurred in Ohio. To the contrary, this conduct occurred, if at all, in California, where the Defendants actually reside. Furthermore, none of the communications purposefully directed to HCC in Ohio form the "heart" of this claim for breach of fiduciary duty; the communications directed to HCC are, in fact, unrelated to this alleged conduct.

The Second Claim for Relief in the Complaint sets forth a cause of action for fraud. This claim is also based on Stein's and Barling's alleged improper mismanagement and conversion of HealthMed's corporate assets for their own personal benefit and to the detriment of HCC. The Complaint alleges, in addition, that Swab engaged in fraud by concealing its transfer of assets on behalf of Stein and Barling. In support of this claim, HCC relies specifically on the Defendants' alleged filing of false and misleading disclosures with the SEC, insider trading, and fraudulent convincing of investors in New York to purchase Med Diversified stock. Like the breach of fiduciary duty claim, none of the conduct giving rise to this claim occurred in Ohio, nor is this claim based on the communications that were purposefully directed to Ohio. Rather, this claim is based on conduct that occurred in California, New York, and other remote jurisdictions, all of which have no connection to the communications transmitted to HCC in Ohio.

The Third Claim for Relief, conspiracy, is premised on Stein's and Barling's alleged agreement to transfer and convert corporate assets for their own benefit. Similarly, the Fourth Claim for Relief, conversion, is based upon Stein's and Barling's alleged conversion of the assets of HealthMed and Swab. The Fifth Claim for Relief, fraudulent transfer under Ohio Uniform Fraudulent Transfer Act, Ohio Rev. Code §§ 1336.01 *et seq.,* is premised on the Defendants' alleged transfers of assets without receiving adequate compensation therefor in an apparent effort to render themselves insolvent and unable to meet the legitimate needs of their creditors, including HCC. By HCC's own description of the events, none of these alleged actions took place in Ohio, nor were they related to the communications that were purposefully directed to HCC in Ohio.[11]

The Court acknowledges HCC's argument that the Defendants concealed their fraudulent and other allegedly illegal conduct when they communicated with HCC in Ohio. Nonetheless, the conduct that gives rise to the cause of action is the conduct that occurred outside Ohio. Were it not for the Defendants' alleged improprieties, all of which allegedly occurred outside this state, the Plaintiff would have no cause of action. Thus, the Court finds that the Defendants did not purposefully avail themselves of the privilege of acting in Ohio simply by directing certain communications to HCC in Ohio, as those communications do not form the "heart" of the instant cause of action. Furthermore, the cause of action does not arise from the Defendants' activities in Ohio.

Therefore, the Court finds that the Plaintiff has not met its burden of demonstrating that personal jurisdiction exists, and, even if the Court had found that

11. The Plaintiff's remaining claims for relief do not allege particular wrongdoing by the Defendants, but simply set forth the particular type of relief sought by the Plaintiff.

abstention were improper, it would **GRANT** the Defendants' Motion to Dismiss on that basis.

## V. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Defendants' Motion to Dismiss on Jurisdictional Grounds Only.

**IT IS SO ORDERED.**